**William SCOTT and Rosemary Scott, Plaintiffs–Appellants,**

v.

**James E. O'GRADY, Sheriff of Cook County, and Kelvin Branch, Deputy Sheriff of Cook County, Defendants–Appellees.**

No. 91–2443.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 21, 1992.

Decided Sept. 16, 1992.

Rehearing and Rehearing En Banc Denied Jan. 5, 1993.

Henry Rose and Lewis Check (argued), Loyola University Community Law Center, Chicago, Ill., for plaintiffs-appellants.

Jack O'Malley, State's Atty. of Cook County, Douglas B. Swill, Asst. State Atty. (argued), Office of the State's Atty. of Cook County, Chicago, Ill., for defendants-appellees.

Before POSNER and MANION, Circuit Judges, and VAN SICKLE, Senior District Judge.*

MANION, Circuit Judge.

William and Rosemary Scott rented two apartments in a building which was the subject of a foreclosure action and a judicial sale. The Commerce Mortgage Corporation bought the property at the judicial sale and, pursuant to the Illinois Mortgage Foreclosure Law, received a Writ of Assistance from the Circuit Court of Cook County directing the Cook County Sheriff to assist Commerce in obtaining possession of the property. Pursuant to this writ, Cook County Deputy Sheriff Kelvin Branch forcibly evicted the Scotts—throwing their belongings into the street. The Scotts filed this section 1983 action against Kelvin Branch and James E. O'Grady, the Sheriff of Cook County, in their official capacities. The district court dismissed the suit as barred by the Eleventh Amendment, *Scott v. O'Grady*, 760 F.Supp. 1288, 1292–93 (N.D.Ill.1991), and the Scotts appeal. We affirm.

* Hon. Bruce M. Van Sickle, Senior District Judge for the District of North Dakota, is sitting by designation.

## I.

We review a grant of a motion to dismiss *de novo*, accepting as true all well-pleaded factual allegations and drawing inferences in favor of the plaintiff. *Prince v. Rescorp Realty*, 940 F.2d 1104, 1106 (7th Cir.1991). "However, we are not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *R.J.R. Services, Inc. v. Aetna Casualty and Surety Co.*, 895 F.2d 279, 281 (7th Cir.1989). As stated in the complaint, the facts are as follows:

On October 31, 1987, William Scott entered into a written, two-year lease with Larry Holder for the first floor and basement apartments in a building Holder owned at 449 West 61st Street, Chicago, Illinois; he paid Holder the first month's rent and a security deposit. Unbeknownst to the Scotts, the building was then the subject of a foreclosure action. In February 1986, twenty months earlier, the Commerce Mortgage Corporation had filed a mortgage foreclosure action against Holder. On November 10, 1987, the Circuit Court of Cook County entered a judgment for foreclosure in favor of Commerce and authorized judicial sale of the property. Commerce purchased the property at a sheriff's sale in January 1988, and the sale was approved by the Circuit Court. Meanwhile, the Scotts moved into the apartments and continued to pay monthly rent to Holder.

In July 1988, Commerce received a sheriff's deed to the property. On August 23, 1988, Commerce moved for and received from the Circuit Court of Cook County a "Writ of Assistance." The writ, issued pursuant to the Illinois Mortgage Foreclosure Law, Ill.Rev.Stat. ch. 110, § 15–101 *et seq.*, directed the Sheriff of Cook County to:

[a]ccompany the plaintiff to the property located at 449 West 61st Street, Chicago, Illinois, 60621, and cause each and every person found in and upon said premises to be removed therefrom, together with each and every item of personal property belonging to said persons, and to use any and all such force as may be necessary to cause possession of the premises to be surrendered to the plaintiff and to insure that the plaintiff is able to take possession thereof and securing possession to the plaintiff.

The complaint alleges that Commerce knew, or should have known, that the Scotts were tenants in possession of the property. Nonetheless, Commerce did not name the Scotts in its motion for the writ, did not send them notice of the motion, and did not inform the Circuit Court that the Scotts were living at the property. The Scotts were not named in the Writ of Assistance and were never given a copy (or any other written notice) of the writ.

Pursuant to the Writ of Assistance, at approximately 8:00 a.m. on October 11, 1988, Cook County Deputy Sheriff Kelvin Branch and other employees of the Cook County Sheriff's office accompanied agents of Commerce Mortgage to 449 West 61st Street. When they arrived, William Scott informed Deputy Sheriff Branch that he had not been served with any written notice of a court proceeding affecting his tenancy. Commerce's agents then told Branch to immediately and forcibly evict the Scotts, and Branch did—throwing the Scotts' belongings into the street. As a result, many of the Scotts' personal belongings were damaged, destroyed or lost.

On October 4, 1990, the Scotts filed this section 1983 action against Branch and James E. O'Grady, the Sheriff of Cook County, in their official capacities, claiming that their participation in the forcible eviction deprived the Scotts of their property without due process of law in violation of the Fourteenth Amendment.[1] The complaint alleges that Sheriff O'Grady "has a policy and practice of evicting tenants pursuant to Writs of Assistance" and that

---

1. The complaint also named Commerce and the Diamond Mortgage Corporation (the assignee of Commerce's mortgage interests in the property) as defendants. The Scotts entered a settlement with the two corporate defendants, and the claims against them were accordingly dismissed.

"[s]aid policy and practice allowed deputy sheriffs of Cook County to evict a tenant in possession who was not named on the Writ of Assistance solely on the oral representation of the party or party's agent seeking to enforce the Writ that some form of advance notice of eviction had been given to the tenant in possession." The complaint asks for compensatory damages, punitive damages and an award of attorney's fees pursuant to 42 U.S.C. § 1988.

O'Grady and Branch filed a Rule 12(b)(6) motion to dismiss, claiming that the Scotts' suit is an action against the State of Illinois and is therefore barred by the Eleventh Amendment. O'Grady and Branch argued that, when they carried out the Writ of Assistance issued by the state court, they were effectively acting as state officers. The Scotts, relying on the Illinois Constitution and state statutes, responded that O'Grady and Branch are officers of Cook County, not the State. The district court agreed with the defendants and dismissed the complaint.

## II.

The Eleventh Amendment to our Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although this language expressly encompasses only suits brought against a state by citizens of another state, the Eleventh Amendment has long been interpreted to also bar federal courts from exercising jurisdiction over actions against a state brought by her own citizens. *Papasan v. Allian,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986) (citing *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). Eleventh Amendment issues arise whenever a private citizen files a federal lawsuit against a state, a state agency, or a state official—although the effect of the amendment differs depending on the category of defendant. *Kroll v. Board of Trustees of the University of Illinois,* 934 F.2d 904,

907 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 377, 116 L.Ed.2d 329 (1991).

All suits against a state or its agencies are barred by the Eleventh Amendment unless the state consents to suit in federal court or Congress uses its powers under the Fourteenth Amendment to abrogate the state's Eleventh Amendment immunity. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Kroll,* 934 F.2d at 907. Suits against state officials, however, are sometimes permissible. A suit against a state official in his personal capacity is not barred by the Eleventh Amendment— although the state official may be able to assert personal immunity defenses (i.e., qualified immunity) and a damage award may be executed only against the official's personal assets. *Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985); *Kroll,* 934 F.2d at 907. An official can also be sued in his official capacity. But an official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver by the state or a congressional override. *Graham,* 473 U.S. at 169, 105 S.Ct. at 3107; *Kroll,* 934 F.2d at 907–08. An exception to this rule is an official-capacity suit for prospective injunctive relief: a suit "to enjoin as unconstitutional a state official's action is not barred by the Amendment." *Papasan,* 478 U.S. at 276–78, 106 S.Ct. at 2839–40 (citing *Ex Parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908)); *see also Kroll,* 934 F.2d at 908.

The Scotts have sued Cook County Sheriff O'Grady and Deputy Sheriff Branch in their official capacities for compensatory and punitive damages. An official-capacity suit merely represents another way of pleading an action against an entity of which an officer is an agent and is treated as a suit against that entity. *Graham,* 473 U.S. at 165–66, 105 S.Ct. at 3104–05; *see also Parker v. Williams,* 862 F.2d 1471,

1475 (11th Cir.1989) ("an action against an official acting in his official capacity imposes liability on the entity that official represents"). Thus, if O'Grady and Branch were acting as agents of the State of Illinois when they forcibly evicted the Scotts, this lawsuit is a damage action against Illinois and is barred by the Eleventh Amendment. But since the Eleventh Amendment bar "does not extend to counties and similar municipal corporations," *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977), this suit can go forward if O'Grady and Branch were acting as county officials.[2]

█ Thus, we must determine whether Sheriff O'Grady and Deputy Sheriff Branch are agents of the state (in which case the Eleventh Amendment protects them), or of the county (in which case it does not). *Hufford v. Rodgers,* 912 F.2d 1338, 1341 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1312, 113 L.Ed.2d 246 (1991). The resolution of this issue depends, at least in part, on state law. *Id.* at 1341–42 (suit against Florida sheriff not barred by Eleventh Amendment because the Florida state constitution designates the sheriff as a county officer and the sheriff's budget, salary and any judgment against him is paid by the county); *Free v. Granger,* 887 F.2d 1552, 1557 (11th Cir. 1989) (Eleventh Amendment bars suit against Alabama sheriffs because under the Alabama Constitution, a sheriff is an executive officer of the state). *See also Mt. Healthy,* 429 U.S. at 280, 97 S.Ct. at 572 (whether state agency should be treated as an "arm of the State" or as a county "depends, at least in part, upon the nature of the entity created by state law"); *Soderbeck v. Burnett County,* 821 F.2d 446, 451–52 (7th Cir.1987) (Wisconsin sheriff was not a policy-maker for county because

the Wisconsin Supreme Court determined that a sheriff is an agent of the state).

Illinois law, as the Scotts point out, classifies sheriffs as county officials. Like the Florida Constitution discussed in *Hufford,* the Illinois Constitution specifically designates the sheriff as a county officer. Ill. Const. art. VII, § 4(C):

### § 4. County Officers

\*   \*   \*   \*   \*   \*

(c) Each county shall elect a *sheriff,* county clerk and treasurer and may elect or appoint a coroner, recorder, assessor, auditor and such other officers as provided by law or by county ordinance. Except as changed pursuant to this Section, elected county officers shall be elected for terms of four years at general elections as provided by law....

(emphasis added). Also, as in *Hufford,* Illinois statutes provide that the county—not the State of Illinois—is responsible for paying the sheriff's salary, Ill.Rev.Stat. ch. 34, § 4–8001, and for providing the necessary offices, furniture and expenses for the use of the sheriff. Ill.Rev.Stat. ch. 34, § 5–1106. Finally, as in *Soderbeck,* the Illinois Supreme Court has long held that the sheriff is an officer of the county. *People ex rel. Davis v. Nellis,* 249 Ill. 12, 94 N.E. 165, 169 (1911) (the "sheriff is the principal executive officer of the county"); *see also Holda v. County of Kane,* 88 Ill.App.3d 522, 43 Ill.Dec. 552, 559, 410 N.E.2d 552, 559 (1980) ("the sheriff is the chief law enforcement officer of the county"). Since deputy sheriffs are appointed by the county sheriff, Ill.Rev.Stat. ch. 34, § 3–6008, and "may perform any and all the duties of the sheriff," and since the acts of deputies are "held to be acts of the sheriff," Ill.Rev.Stat. ch. 34, § 3–6015, they too are county officials under Illinois law. *See Carr v. City of Florence,* 916 F.2d

---

**2.** In addition, since the Supreme Court has held that neither states nor state officials acting in their official capacities are "persons" within the meaning of 42 U.S.C. § 1983, *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989), this suit is not authorized by federal statute if O'Grady and Branch are deemed to be state officials. Municipalities, other local government units and local

government officials sued in their official capacities are "persons" under section 1983 and can be sued where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services,* 436 U.S. 658, 690 & n. 55, 98 S.Ct. 2018, 2035–36 & n. 55, 56 L.Ed.2d 611 (1978).

1521, 1526 (11th Cir.1990) ("If the deputy's acts are generally considered the acts of the sheriff, it is logical that those acts should also enjoy the immunity covering the sheriff's own acts.").

So, when a county sheriff in Illinois performs his duties as the principal executive officer or chief law enforcement officer of the county, he acts as a county official and does not get the benefit of the Eleventh Amendment. But this conclusion does not end our inquiry. The fact that O'Grady and Branch normally act as county officials does not mean that they can *never* act as an arm of the state. O'Grady and Branch argue that they act as an arm of the state when, as in this case, they act to enforce orders issued by state courts. We agree.

The Eleventh Circuit in *Hufford*, in addition to considering how state law categorized a sheriff, also looked to the degree of control the state maintained over the sheriff. 912 F.2d at 1341. In *Hufford*, the plaintiff sued a Florida sheriff and deputy sheriff for illegally seizing her son. *Id.* at 1340. The court noted that, under Florida law, a sheriff has control over the operations of his office. *Id.* at 1341. The Scotts are suing O'Grady and Branch for the unlawful execution of a court order. Illinois law, in contrast to the Florida law discussed in *Hufford*, gives county sheriffs no discretion in executing court orders. Rather, the sheriff has a statutory duty to "serve and execute ... all warrants, process, orders and judgments of every description that may legally be directed or delivered to them." Ill.Rev.Stat. ch. 34, § 3–6019. In addition, if the sheriff fails "to perform the command of any warrant, process, order or judgment," he is deemed in contempt of court and is liable "for all damages occasioned thereby." Ill.Rev. Stat. ch. 34, § 3–6020. Illinois law thus specifically directs the county sheriff to enforce state court orders and punishes him if he does not.

In this case, the state court entered a judgment of foreclosure in favor of Com-

merce pursuant to the Illinois Mortgage Foreclosure Law. Ill.Rev.Stat. ch. 110, § 15–101 *et seq.* (1986); *see also* Ill.Rev. Stat. ch. 110, § 15–1101 *et seq.* (1992). The Illinois statute gives the court the power to place the mortgagee in possession of the mortgaged premises, Ill.Rev.Stat. ch. 110, § 15–302, and gives the court "full power to enforce such order by contempt process or by such other order as may be appropriate." Ill.Rev.Stat. ch. 110, § 15–304. The Writ of Assistance issued by the Circuit Court of Cook County is such an "other order as may be appropriate." The writ ordered the Sheriff of Cook County to accompany Commerce to the property and to use all means necessary to ensure Commerce's ability to take possession of the property. Under Ill.Rev.Stat. ch. 34, §§ 3–6019, 3–6020, O'Grady and Branch had a statutory, non-discretionary duty to execute this writ. Had they failed to execute the writ, O'Grady and Branch would have been in contempt of court and liable to Commerce for damages.

Under these circumstances, we agree with the district court, *Scott*, 760 F.Supp. at 1293, that Sheriff O'Grady and Deputy Sheriff Branch were not acting as county officials. The county sheriff acts as an arm of the Illinois state judicial system in executing Writs of Assistance and other state court orders. When fulfilling this statutory duty, the sheriff and his deputies must be deemed state officials for the purposes of Eleventh Amendment immunity. *See Shipley v. First Federal Savings and Loan Ass'n*, 619 F.Supp. 421, 434–35 (D.Del.1985) (county sheriff performing statutory duties in connection with mortgage foreclosure action regarded as an officer of the state). *See also Echols v. Parker*, 909 F.2d 795, 800–01 (5th Cir.1990) (county officials enforcing unconstitutional state statute were acting as agents for the state); *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980) (county judge implementing unconstitutional state law acted· as a state official).[3]

---

**3.** The Scotts attempt to distinguish *Echols* and *Familias Unidas* on the ground that these two cases involved county officials acting pursuant to an unconstitutional state statute. In this case, the Scotts do not allege that the Illinois Mortgage Foreclosure Law is unconstitutional.

The Scotts also argue that this is not a suit against the state because, pursuant to two Illinois indemnification statutes, Ill. Rev.Stat. ch. 34, § 5–1002 and ch. 85, § 9–102, any damage award will be paid by Cook County, not the State of Illinois. First of all, the proposition that Cook County would be responsible for paying any judgment entered against Sheriff O'Grady and Deputy Sheriff Branch is debatable. Ill.Rev.Stat. ch. 85, § 9–102 provides:

A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article....

Ill.Rev.Stat. Ch. 34, § 5–1002 provides:

If any injury to the person or property of another is caused by a sheriff or any deputy sheriff, while the sheriff or deputy is engaged in the performance of his or her duties ... the county shall indemnify the sheriff or deputy ... for any judgment recovered against him or her as the result of that injury, except where the injury results from the wilful misconduct of the sheriff or deputy....

These two statutes only require Cook County to pay for tort judgments against Cook County, its sheriff or deputy sheriffs. And we have held that a section 1983 judgment is a "tort judgment" within the meaning of Ill.Rev.Stat. ch. 85, § 9–102. *Kolar v. County of Sangamon*, 756 F.2d 564, 566 (7th Cir.1985). But would a judgment in this case be against the county, the sheriff or any deputy sheriff? The Scotts have sued O'Grady and Branch in their official capacities, and a suit against a government official in his official capacity is a suit against the governmental entity for which he is an agent, not the official himself. Thus, any judgment would not be against O'Grady or Branch; rather, it would be against the governmental entity on whose behalf O'Grady and Branch were acting.

Rather, so the Scotts argue, they challenge O'Grady's "policy and practice of evicting tenants pursuant to Writs of Assistance." The Scotts' allegation that O'Grady had a "policy and practice" of following state law, however, cannot magically transform that state law into a county policy actionable under *Monell*. O'Grady and Branch were acting as directed by state law and were, therefore, acting as state officials.

If that was Cook County, then the above statutes would direct the county to pay the judgement; if that was the State of Illinois, the above statutes do not direct Cook County to pay the judgment. Citation to these two Illinois statutes, therefore, merely begs the question.

But even if a judgment for the Scotts would be paid by the county, that does not undermine our conclusion that this is a suit against the State of Illinois. It is true that whether a suit would harm the state fisc is an important factor in determining whether a lawsuit is against a state—that is, whether an unnamed state is the "real, substantial party in interest." *Pennhurst*, 465 U.S. at 101 & n. 11, 104 S.Ct. at 908 & n. 11. "We have never held, however, that this factor alone is dispositive in every case." *Jensen v. State Bd. of Tax Commissioners*, 763 F.2d 272, 277 (7th Cir. 1985). A state can be the "real, substantial party in interest" even if its treasury will remain untouched: "The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, *or* interfere with the public administration, *or* if the effect of the judgment would be to restrain the Government from acting or to compel it to act" *Pennhurst*, 465 U.S. at 101 n. 11, 104 S.Ct. at 908 n. 11 (emphasis added); *see also Jensen*, 763 F.2d at 277 (to determine whether the state is the real party in interest, "we are required to evaluate more generally whether a suit would interfere with public administration, or otherwise restrain or compel government action").

### III.

We hold that O'Grady and Branch were acting as state officials when they forcibly evicted the Scotts; this suit against O'Grady and Branch in their official capacity is therefore barred by the Eleventh Amend-

ment (and is not authorized by federal statute). The district court's judgment is

AFFIRMED.