John A. HARRELL, Plaintiff,

v.

Michael F. SHEAHAN, Sheriff of Cook County, Defendant.

No. 95 C 3798.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 20, 1996.

J. Dillon Hoey, James Louis Farina, Brian Culley Walker, and Patrick W. Walsh, Hoey & Farina, Chicago, IL, for plaintiff.

Terry L. McDonald, Michael David Jacobs, and Connie R. Sprovieri–Barba, Cook County State's Attorney, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff John A. Harrell brings this two-count First Amended Complaint against Michael F. Sheahan, the Sheriff of Cook County.[1] In Count I Harrell claims that the defendant deprived him of his rights under the Eighth and Fourteenth Amendments to the Constitution by (1) detaining him for more than a month past his release date, and (2) failing to protect him from an attack by a fellow inmate. In Count II, the plaintiff brings a state law false imprisonment claim based on his prolonged detention. The defendant has moved for summary judgment on all counts. For the reasons set forth below, we grant the defendant's motion for summary judgement.

### I. Background[2]

Harrell was arrested on February 16, 1993 on charges of aggravated stalking, and committed to the Cook County Department of Corrections ("CCDOC") the following day. On June 15, 1993, the plaintiff was convicted of felony stalking, and on July 7, 1993, Circuit Court Judge Krop issued an "Order of

---

1. The First Amended Complaint also names the Cook County Department of Corrections as a defendant, but this entity was dismissed from this action on the pleadings on April 26, 1996. In addition, the plaintiff has named "Unknown Cook County Sheriff's Office Employees" as defendants. However, it does not appear that Harrell has ever attempted to identify these individuals or serve them, and indeed, his response to the instant motion is directed solely towards the liability of Michael Sheahan. Accordingly, we shall consider the claims against these defendants dismissed.

2. We briefly note the impact of General Rules 12(M) and 12(N) of the United States District Court for the Northern District of Illinois ("Local Rule 12(M)" and "Local Rule 12(N)") on this motion. According to Local Rule 12(M), a party moving for summary judgment must set forth specific, undisputed facts which it believes entitle it to judgment as a matter of law. Local Rule

12(M)(3). The non-movant must then respond to each of the movant's statements, and include, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 12(N)(3)(a). The non-movant is also entitled to submit a statement of additional facts that militates against summary judgment, so long as each factual assertion is supported with citations to the record. Local Rule 12(N)(3)(b). If either party fails to support its assertions or responses with specific references to the evidence, the unsupported statement or response will be ignored, and the opponent's supported factual assertions will be deemed admitted. Local Rule 12(M), 12(N)(3)(b); *see Skagen v. Sears, Roebuck & Co.,* 910 F.2d 1498, 1500 (7th Cir.1990). In this case, the plaintiff has neglected to cite any support for his Local Rule 12(N)(3)(b) statements, and therefore we shall ignore them.

Sentence and Commitment to Cook County Department of Corrections" that stated:

> [Harrell] was Sentenced to Six Months (6) in Cook County Department of Corrections and Thirty Months (30) Adult Probation for the offense [of stalking]—Credit given for 142 days in Cook County Department of Corrections—Time Considered Served—Time Actually Served

Def.'s Mot., Ex. 4; Pl.'s Resp., Ex. B. Harrell claims that under this order he was entitled to "day-for-day" good time credits. Since he had already served 142 days of his sentence by July 7, 1993, he maintains that he should have been released on that date. Harrell claims he tried to persuade numerous officials at the CCDOC of his interpretation, but officials at the CCDOC disagreed, concluding that the order was ambiguous on the issue of whether Harrell was to receive good-time credits.

On July 11, 1993, four days after being returned to the CCDOC, Harrell was attacked by several other inmates and suffered a broken jaw. The plaintiff maintains that the attack was perpetrated against him by members of the Vice Lords gang because Harrell was a "neutron"—that is, he was not affiliated with any gang at the facility. According to Harrell, shortly before the attack another inmate, Peter Guerrero, alerted CCDOC Officer Long, the officer assigned to supervise and monitor the wing, that he was the subject of gang intimidation. Harrell claims that despite the fact that jail officers were aware of this risk of inmate-on-inmate violence, no action was taken by the CCDOC officers to protect him, and indeed at the time he was attacked, Officer Long had left her post unattended.

Although Harrell continued to tell CCDOC personnel that he should be released, he was detained at the facility for roughly one more month. On August 9, 1993, Judge Krop issued a "corrected mittimus" order to the CCDOC that explicitly entitled the plaintiff to receive day-for-day good time credit. Harrell was released from the CCDOC the following day.

On June 29, 1995, Harrell filed a two-count complaint, which he amended on November 7, 1995. Count I alleges that Sheahan violated the plaintiff's rights under the Eighth and Fourteenth Amendments by detaining him past July 7, 1993, and failing to protect him from the July 11, 1993 assault. Count II asserts a state law tort claim for false imprisonment. Sheahan now moves for summary judgement on both counts.

## II. Summary Judgment Standard

■ "A district court must grant summary judgment where the record before it shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir.1995) (quoting Fed. R.Civ.P. 56(c)). The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If this burden is carried, the non-movant "must set forth specific facts showing that there is a genuine issue for trial" in order to defeat summary judgment, and cannot merely rest on the allegations contained in the pleadings. Fed. R.Civ.P. 56(e); *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. In deciding a motion for summary judgment we read the facts in a light most favorable to the non-moving party, *Cuddington v. Northern Ind. Public Serv. Co. (NIPSCO)*, 33 F.3d 813, 815 (7th Cir. 1994), although conclusory allegations from the non-movant cannot defeat a properly supported motion for summary judgment. *Smith*, 60 F.3d at 320.

## III. Discussion

### A. False Imprisonment (Count II)

■ In Count II of his First Amended Complaint, Harrell asserts a state law claim for false imprisonment based on his confinement past July 7, 1993, when Judge Krop issued the original sentencing order. However, as the Sheriff of Cook County, Sheahan is entitled to the benefits of the Illinois Local Government Tort Immunity Act, which provides in part:

> No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is com-

menced within one year from the date that the injury was received or the cause of action accrued. For purposes of this Article, the term "civil action" includes any action, whether based upon the common law or statutes or Constitution of this State.

745 ILCS 10/8–101. The latest possible date on which Harrell's false imprisonment claim could have accrued is August 10, 1993—the date he was released from the CCDOC—although it may well be that the statute began to run before that time. *Compare Gora v. Edgar,* No. 95 C 4087, 1996 WL 11938, at *2 (N.D.Ill. Jan. 10, 1996) ("Any state common law claim of false imprisonment or false arrest began to accrue on the date the arrest and imprisonment occurred."), *with Cooper v. Butler,* No. 92 C 5604, 1995 WL 399009, at *5 (N.D.Ill. June 29, 1995) (concluding that "Plaintiff's state claims for malicious prosecution and false imprisonment did not accrue until he was acquitted of murder and released"). In any event, regardless of the date on which the statute of limitations began to run, it is obvious that Harrell failed to file his action within the one-year period set out by 10/8–101. Accordingly, because the plaintiff's state law false imprisonment claim is time-barred, we grant summary judgment to the defendant on this count.

### B. Section 1983 Claims (Count I)

Harrell bases Count I on two theories. First, he claims that his continued detention after July 7, 1993, deprived him of his liberty without due process of law, in contravention of the Due Process Clause of the Fourteenth Amendment. Second, he maintains that by failing to protect him from other inmates, the defendant subjected him to cruel and unusual punishment as prohibited by the Eighth Amendment. The plaintiff seeks to vindicate both of these rights by bringing a claim under 42 U.S.C. § 1983.

To prevail on a § 1983 claim, the plaintiff must show (1) that the acts in question were committed "under color of state law," and (2) that these acts "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the

United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled in other respects by Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986). As Sheriff of Cook County, Sheahan's control over the CCDOC is clearly action taken under color of state law. Thus, our focus is on whether the evidence proffered by the plaintiff could support a finding that Harrell was deprived of a constitutional right, privilege, or immunity by virtue of the Sheriff's conduct.

However, before delving into the scope of the constitutional rights asserted by the plaintiff, we briefly consider the individual capacity claims, if any, brought against Sheahan. In order to hold a public official liable in his individual capacity, "there must be a showing that the official knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *Rascon v. Hardiman,* 803 F.2d 269, 274 (7th Cir.1986). In other words, "[a] prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior;* 'the official must actually have participated in the constitutional wrongdoing.'" *Antonelli v. Sheahan,* 81 F.3d 1422, 1428 (7th Cir.1996) (quoting *Cygnar v. City of Chicago,* 865 F.2d 827, 847 (7th Cir.1989)). The plaintiff has not directed us to any evidence indicating that Sheriff Sheahan was personally involved in, or had knowledge of, either the plaintiff's continued detention at the CCDOC past July 7, 1993, or the alleged lack of supervision at the plaintiff's wing on July 11, 1993. Indeed, we would be surprised to find such evidence, given the role the defendant plays in the administration of the CCDOC. As the Seventh Circuit recently observed:

> Michael Sheahan, as Sheriff of Cook County, ... [is] far from most of the day-to-day decisions that may have affected inmates. Even if some of the written complaints that [the plaintiff] allegedly filed were addressed directly to Sheriff Sheahan ..., [he] could [not] realistically be expected to be personally involved in resolving a situation pertaining to a particular inmate unless it were of the gravest nature.

*Antonelli*, 81 F.3d at 1428. Accordingly, as no evidence of Sheahan's personal involvement has been proffered, summary judgment for the defendant is proper with regard to any individual capacity claims raised by Harrell.

■ This leaves only the possibility that Sheriff Sheahan is sued in his official capacity—that is, that the County of Cook is the true defendant in Count I. *See Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *DeGuiseppe v. Village of Bellwood*, 68 F.3d 187, 189 (7th Cir.1995). Because *respondeat superior* does not apply to suits against municipalities under § 1983, *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), the County of Cook can be held liable in this case only if the alleged constitutional violation occurred as a result of the county's official customs, policies, or practices, *Holmes v. Sheahan*, 930 F.2d 1196, 1199 (7th Cir.), *cert. denied*, 502 U.S. 960, 112 S.Ct. 423, 116 L.Ed.2d 443 (1991).

> Case law recognizes three ways in which a municipality's policy can violate an individual's civil rights: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law'; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.'"

*McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir.1995) (quoting *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734–35 (7th Cir.1994)). The claims asserted in the instant case do not fit into either catego-ry (1) or (3), and thus to proceed with Count I the plaintiff must present evidence demonstrating that the alleged deprivations were caused by the sort of widespread practices described in category (2).

■ Plaintiff's first substantive claim in Count I surrounds his continued detention after Judge Krop entered the July 7, 1993 sentencing order. Although his reasoning is not entirely clear, the plaintiff's argument appears to be that the CCDOC has a policy of inadequately training its employees to interpret court orders, and that this policy led officers to misconstrue the order in this case as not entitling Harrell to good time credits. Pl.'s Resp. at 11–12.[3] In support, the plaintiff points to the deposition of Correctional Superintendent John Maul, who states that as of 1993, records officers at the CCDOC did not receive any particular training at interpreting mittimus orders issued by the Circuit Court. Maul Dep. at 20.[4] In addition, Maul states that several times a week personnel at the CCDOC would construe a court order similar to the one at issue here as not requiring the immediate release of an inmate, and then later receive word from the Circuit Court that the judge intended the prisoner to be released. *Id.* at 38–40.

However, despite the fact that some of this evidence could support a finding of custom or policy by the CCDOC, summary judgment for the defendant is appropriate on this claim because the plaintiff has failed to show that the alleged policy actually deprived him of his rights under the Due Process Clause of the Fourteenth Amendment. As the Supreme Court observed in *Parratt*, 451 U.S. at 537, 101 S.Ct. at 1914, "[n]othing in that Amendment protects against all deprivations of life, liberty, or property by the State." Rather, it is only those deprivations accom-

---

3. Defendant claims that this mistake was reasonable because the court order was ambiguous and the Illinois statutes did not provide for inmates convicted of stalking to receive good time credit. This explanation is spurious. While it is true that 730 ILCS 5/3–6–3(a)(3) now precludes the CCDOC from granting more than 90 days of good time credit to a convicted stalker, this prohibition did not take effect until August 20, 1993, *see* P.A. 88–402 § 99, and thus would have had no impact on calculating Harrell's sentence.

4. We note that several of the depositions submitted by the plaintiff in opposition to the instant motion do not contain any page numbers, thus requiring this Court to individually count the pages in the documents. In addition, several times when quoting from the depositions the plaintiff neglects to indicate that material has been omitted from the quotations. We caution the plaintiff and his counsel to be more careful and attentive in their submission of materials to this Court.

panied by a lack of "due process" that implicate the Fourteenth Amendment. *Id.; Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). Thus, the Supreme Court held in *Parratt* that a prisoner did not have a claim under the Due Process Clause for the alleged deprivation of hobby materials by prison guards, since the deprivation did not occur pursuant to any established state procedure—in other words, it was "random and unauthorized"—and the state provided the prisoner with an adequate postdeprivation tort claim. 451 U.S. at 543–44, 101 S.Ct. at 1917.[5]

Although the deprivation at issue in *Parratt* was of property, the reasoning of the case has been extended to deprivations of liberty as well. *Zinermon v. Burch,* 494 U.S. 113, 131–32, 110 S.Ct. 975, 986–87, 108 L.Ed.2d 100 (1990). For example, in *Toney–El v. Franzen,* 777 F.2d 1224, 1227–28 (7th Cir.1985), *cert. denied,* 476 U.S. 1178, 106 S.Ct. 2909, 90 L.Ed.2d 994 (1986), the court held that a prisoner in Illinois did not state a due process claim based on state officials' incorrect calculation of his sentence, even though this error caused the state to detain him for an additional 306 days beyond that authorized by the state court order. The court concluded that because the prisoner could have informally petitioned prison officials for his release, filed a writ of mandamus in state court, or brought a false imprisonment claim in state court, the state provided him with sufficient postdeprivation remedies to satisfy due process. *Id.* at 1228; *see also Pacelli v. deVito,* 972 F.2d 871, 877 (7th Cir.1992) (noting that *Parratt* and *Toney–El*

would preclude mental patient's due process claim that he was detained for longer than authorized).

*Parratt* and *Toney–El* control the disposition of this claim. Just as in *Toney–El,* Harrell could have enlisted a host of state procedures to remedy his erroneous detention, including a writ of mandamus, 735 ILCS 5/14–101 to 5/14–109, or a false imprisonment action, *Baltz v. Shelley,* 661 F.Supp. 169, 181 (N.D.Ill.1987). Indeed, state procedures eventually corrected the error in Harrell's detention: on August 9, 1993, the state court issued a corrected mittimus specifically stating that the plaintiff was entitled to day-for-day good time credit. The fact that Harrell's false imprisonment claim in Count II is barred by the statute of limitations does not render that procedure inadequate, since he had one year from his illegal detention to bring the claim. In sum, the procedures provided by Illinois to correct the error in Harrell's detention were adequate under the Due Process Clause. Although his continued detention past July 7, 1993 is regrettable and unfortunate, it cannot provide the basis for a due process claim. *Toney–El,* 777 F.2d at 1228–29. Accordingly, we grant summary judgment to the defendant on this part of Count I.[6]

Finally, we address the claim that Sheriff Sheahan is liable in his official capacity for allowing the attack on Harrell by another inmate. The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety

---

**5.** As previously noted, *Parratt* was later overruled in part by *Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986), but only with regard to the portion of *Parratt* that considered a negligently caused loss to constitute a "deprivation" under the Due Process Clause.

**6.** Defendant also argues that this claim is barred by the Eleventh Amendment. Relying on *Scott v. O'Grady,* 975 F.2d 366 (7th Cir.1992), *cert. denied,* 508 U.S. 942, 113 S.Ct. 2421, 124 L.Ed.2d 643 (1993) (holding that sheriff acts as arm of state judiciary when executing writs of assistance and orders of eviction), the defendant contends that the Sheriff is acting as a state official when enforcing state court mittimus orders, and therefore is entitled to the protection of the Eleventh Amendment. However, it is not entirely clear

that *Scott* should be applied mechanically whenever a county sheriff acts pursuant to a state court order. *See Hvorcik v. Sheahan,* 847 F.Supp. 1414, 1427 (N.D.Ill.1994) (refusing to apply Eleventh Amendment to non-ministerial duty of tracking and purging arrest warrant from records). Regardless, we need not decide whether *Scott* applies to this case since Harrell's Fourteenth Amendment claim is easily resolved on the merits. *See Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir.1996) (recognizing that courts "may disregard potentially difficult jurisdictional issues and proceed directly to the merits where there is no practical difference in the outcome."). Therefore, Defendant's motion for leave to add this defense to his answer [Docket No. 37] is denied as moot.

of the inmates." *Farmer v. Brennan,* 511 U.S. 825, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)). However, not every instance of inmate-on-inmate violence constitutes a violation of the Eighth Amendment; rather, the injury suffered by the inmate must be objectively serious enough to implicate the Constitution, and prison officials must have acted (or failed to act) with the requisite state of mind. —— U.S. at ——, 114 S.Ct. at 1977. "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety," that is, "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at ——, ——, 114 S.Ct. at 1977, 1979; *see Billman v. Indiana Dep't of Corrections,* 56 F.3d 785, 788 (7th Cir.1995). For this claim to survive summary judgment Harrell must also present evidence that a CCDOC custom, policy, or practice was the "moving force [behind] the constitutional violation." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989).

A generous reading of the plaintiff's First Amended Complaint and response to the instant motion implicates three possible policies of the CCDOC: (1) a policy of providing generally inadequate patrol procedures at the CCDOC, (2) a policy of not separating gang members from non-gang members, and (3) a practice of leaving inmate wings entirely unsupervised for significant periods of time. As to the first possible policy, the plaintiff fails to submit any evidence indicating that the patrol procedures at the CCDOC are inadequate, or that the absence of adequate procedures caused his injury. Given that prison administrators are accorded great deference in adopting and implementing prison administration procedures, *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979), the absence of evidence to support this theory is fatal to its viability.

■ Harrell also attacks the CCDOC "policy" of housing gang members with non-gang members. Again, however, he fails to offer any evidence to support his contention that such a policy actually caused his injury, or that the adoption of (or acquiescence to) such a policy constitutes deliberate indifference to inmate health or safety. For example, Plaintiff does not offer any evidence showing that "gang on non-gang" violence is more frequent than violence at the facility in general, or that threats towards non-gang members by gang members are more pervasive than threats among inmates generally. Without evidence of this sort, it cannot be shown that CCDOC officials knew of and disregarded an excessive risk to Harrell's safety, or that the practice of not segregating gangs from other prisoners caused the attack on him. Moreover, without any evidence showing that the identification and separation of inmates according to their gang affiliation (or lack of it) is feasible, the Sheriff cannot be held liable for failing to take this action. *See Farmer,* —— U.S. at —— ——, 114 S.Ct. at 1982–83 (prison officials not liable if they reasonably respond to risk, even though injury eventually occurs); *Houston v. Sheahan,* 62 F.3d 902, 903 (7th Cir. 1995) (jail officials not liable for conditions outside their control).

■ The only remaining practice or policy raised by Harrell is that of allowing guards to leave wings of the prison unsupervised. Harrell claims that his attackers waited until Officer Long left her post before jumping him, and that at the time of his attack there were no CCDOC officials supervising the wing. Pl.'s Dep. at 58–59, 61–62. In addition, the plaintiff points to a notation in the Unit 2–N log book by Officer Long, memorializing a complaint by Peter Guerrero about gang intimidation on the wing only thirty minutes prior to the attack on Harrell. Finally, Harrell points to deposition testimony from Lt. Sawyer indicating that it is accepted practice at the CCDOC to allow an officer to leave his or her control booth post on break without waiting for a replacement, so long as the officer supervising the wing across the hall agrees to monitor the two areas at the same time. Sawyer Dep. at 13–

15. Plaintiff argues that based on this evidence a reasonable jury could conclude that the CCDOC had a policy of allowing one officer to supervise two units of inmates, even when particular threats of "gang on non-gang" violence had been made.

 Even if such a practice demonstrates the kind of "deliberate indifference" required to impose liability on Cook County—a questionable proposition given the difficulties inherent in supervising large prisons—we do not believe the plaintiff has introduced sufficient evidence to show that he suffered a constitutional violation in this case. Harrell claims that Officer Long was told by Guerrero that he was being intimidated by gangs, but the plaintiff does not offer any evidence suggesting that Long knew *Harrell* would be the target of gang violence. Nor does he show that Guerrero's statements alerted Long to a risk of injury to an entire class of persons ("neutrons") of which the plaintiff was a member. To be sure, if dangerous conditions are so prevalent in a facility as to put all inmates (or an identifiable subset of inmates) at risk of serious harm, "it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom." *Farmer,* —— U.S. at ——, 114 S.Ct. at 1982. However, Harrell has not demonstrated that such dire conditions existed in his wing, or that the complaints Long received prior to his attack would have alerted her to the danger he faced. In sum, the plaintiff has failed to uncover the facts needed to demonstrate that Officer Long acted with deliberate indifference, or at the very least, he has failed to marshall the facts contained in the record so that such a conclusion could be supported. Although the plaintiff endured a horrible attack, he has not presented evidence showing that this event was caused by the unconstitutional acts of Officer Long. Accordingly, summary judgment to Sheriff Sheahan on the remainder of Count I is appropriate.

## IV. Conclusion

For the reasons set forth above, summary judgment on Counts I and II is granted to the defendant Sheriff Sheahan. It is so ordered.