151 F.3d 1032
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
James GRANT, Plaintiff-Appellant,
v.
Harry SCHUMAN, et al., Defendants-Appellees.
 No. 96-3760.
 United States Court of Appeals, Seventh Circuit.
 Submitted November 25, 1997.*
Decided July 16, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois. No. 95 C 3035 Richard Mills, Judge.
 Before Hon. THOMAS E. FAIRCHILD, Hon. WALTER J. CUMMINGS, Hon. DANIEL A. MANION, Circuit Judges.
 
 ORDER
 
 1
 James Grant is an Illinois prisoner. On July 27, 1994, he was transferred from Dixon Correctional Center, where he had been housed in the Health Care Unit of the Disability Wing, to Graham Correctional Center, where he was placed with the general prison population. He remained with the general population until he was transferred to the Health Care Unit on approximately October 10, 1994. In 1995 he brought this suit against nine officers and employees of Graham, most of whom were affiliated with the Health Care Unit. Grant's claims fall into two areas: first, he claims violations of the Eighth Amendment and sues under 42 U.S.C. § 1983; and second, he claims violations of the Americans with Disabilities Act (ADA), particularly under 42 U.S.C. § 12131 et seq., which prohibits discrimination by a public entity.
 
 
 2
 Grant's second amended complaint was dismissed without prejudice as to two defendants for lack of service of the summons and complaint. See Fed.R.Civ.P. 4(m). The other defendants, appearing through the Attorney General of Illinois, filed no answer but moved to dismiss, or in the alternative, for summary judgment. The district court granted the "motions," essentially the motion for summary judgment. The court filed an extensive, detailed memorandum, correctly, for the most part, demonstrating that Grant has not established that there are genuine issues of material fact. In the course of discussion, we will deal with any points on which we disagree with the court.
 
 The § 1983 claims
 
 3
 Most of these claims relate to conditions in the Health Care Unit and the conduct of defendants who were health care personnel. We agree that, viewing the record in the light most favorable to Grant, these conditions and conduct did not rise to the deprivation of a constitutional right. One claim was that he was exposed to respiratory diseases by the sharing of cups used to scoop ice out of a dispenser. Grant presented no evidence that he had contracted any communicable disease. While the Eighth Amendment may protect inmates from exposure to certain substances (e.g., asbestos) even if an injury has not yet occurred, see Helling v. McKinney, 509 U.S. 25, 34, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), the facts of this case fall short of Helling's requirements. Grant has not alleged or shown that his future health was unreasonably endangered and that any defendant was deliberately indifferent to his plight, and thus he has not shown an Eighth Amendment claim. Id.
 
 
 4
 Other claims relate to the two-month period Grant spent with the general prison population. The essential allegations are the same as those on which he bases his ADA claim. His second amended complaint states that he has a spinal cord injury which left him paralyzed on the left side, with severe nerve damage, uncontrolled muscle spasms and chronic pain to his legs, back, and lower spine. Because of the distance from his housing to the dining hall and his impaired condition, he was denied meals for two months. The showers and toilet area do not have the hand rails he needed and he fell many times while trying to use the toilet. Defendants produced no evidence contrary to Grant's assertions about his disability, his inability to walk to the dining hall, or his difficulty in using the toilet in the absence of rails. The court made some credibility determinations, inappropriate on a motion for summary judgment. It found the claim of deprivation of food preposterous, and the claim concerning the shower and toilet doubtful. The court seems not only to have overlooked the declaration conforming to 28 U.S.C. § 1746 and making the complaint an affidavit, but also overlooked similar affidavits of other prisoners corroborating Grant's claim concerning his inability to walk to the dining hall. One of the affiants, Walker, asserted he had cooked meals for Grant. To be sure these affidavits were not presented in opposition to summary judgment, but they are bound in the record between Grant's application to proceed in forma pauperis and the original complaint.
 
 
 5
 The court further stated that there was no indication that any of the named defendants knew of Grant's problems arising from his stay with the general prison population from July 27 to October 10, 1994. That seems surely true of the defendants who were involved with Grant only after he came to the Health Care Unit on about October 10. It is less certain as to defendants Schuman and Cearlock. The record contains several handwritten copies of what purports to be a letter from Grant to Dr. Schuman (who was Medical Director of the Department of Corrections) dated August 12, 1994. It describes Grant's disability and the resulting denial of meals and falling because of the lack of rails at the toilet. Dr. Schuman, however, was one of the defendants as to whom the complaint was dismissed for lack of service. Grant has not challenged the dismissal on appeal. There are also in the record several printed prison grievance report forms. The complaint portion is filled in, apparently in Grant's hand printing, and dated September 2, 1994. The counselor's response portion is filled in different handwriting and purported to be signed by a counselor. It is dated the same day. The response is: "Mr. Cearlock stated that inmate can function in G.P. environment. Arrangements were made for him to shower in HCU." Again, the document is not authenticated nor presented in response to the motion for summary judgment. It may suggest that defendant Cearlock, the Health Care Administrator at Graham, was made aware of Grant's complaints about his inability to walk to the dining hall and difficulty in using the toilet, but declined to transfer him to the Health Care Unit, where those problems would not exist. Nevertheless, assuming that keeping Grant at too great a distance from the dining hall and failing to protect him with guard rails was an infliction of cruel and unusual punishment, and assuming that the grievance report would be admissible evidence under Rule of Evidence 803(6) or (8), we think it would not support a finding that defendant Cearlock knew of the conditions of which Grant complained but refused to move him to the Health Care Unit with deliberate indifference to his health or safety. Such a finding would be essential to establishing liability for cruel and unusual punishment. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
 
 The ADA claim
 
 6
 42 U.S.C. § 12132 provides in part that no qualified individual with a disability shall, by reason of such disability, be denied the benefits of the services, programs, or activities of a public entity. Meal service and use of a toilet are services (or activities) of the prison. See Crawford v. Indiana Dep't of Corrections, 115 F.3d 481, 483 (7th Cir.1997). A qualified individual is an individual with a disability who, among other things, with or without the removal of architectural, communication, or transportation barriers or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities. See 42 U.S.C. § 1213(2). On the face of it, Grant is clearly a qualified individual with respect to Graham and the Illinois Department of Corrections. We have already described the gist of his complaint with respect to being housed at a distance from the dining hall, to which he could not walk because of his disability, and with respect to his difficulty in using a toilet which was not equipped with guard rails. Locating him closer to the dining hall or providing a wheel chair and installing rails would be reasonable accommodations. There can be little question but that he has stated and supported a claim for relief under the ADA against the Department of Corrections or the State of Illinois. It has now been established that the ADA covers inmates in state prisons. Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998).
 
 
 7
 Grant, however, did not join as defendants Graham or the Department of Corrections or the State of Illinois. Although he sued the individual defendants in their official, as well as individual capacities, and it is said that a suit against a state officer in his official capacity is a suit against the state, see McCurdy v. Sheriff of Madison County, 128 F.3d 1144, 1145 (7th Cir.1997), that is usually said in holding that the defendant is immune under the Eleventh amendment. See Scott v. O'Grady, 975 F.2d 366, 369 (7th Cir.1992). We do not believe that service of summons on the officer in such a case gives the court jurisdiction over the state as a party. Grant did not seek leave to amend by naming as a defendant Graham Correctional Center or the Department of Corrections or the State of Illinois. If he had done so at a time when the statute of limitations had run, he would have had to show fulfilment of the requirements of Federal Rule of Civil Procedure 15(c)(3) in order to have his amendment relate back to the date of the original pleading. Presumably the state has had notice of this action through the attorney general since the beginning so that the state would not be prejudiced, thereby satisfying subsection (A) of Rule 15(c)(3), but it does not appear that the state knew or should have known that, but for a mistake concerning its identity, the action would have been brought against it, thus leaving unsatisfied subsection (B) of Rule 15(c)(3). Baskin v. City of Des Plaines, 138 F.3d 701, 704 (7th Cir.1998). We are not satisfied that justice requires us to take the unusual step of vacating the judgment so that permission to amend may be sought.
 
 
 8
 We have also noted the possible theory that the right to be free from discrimination may be the type of right, privilege, or immunity secured by law so that Grant may sue Cearlock under 42 U.S.C. § 1983 for depriving him of that right, privilege or immunity. See Mallett v. Wis.Div. of Vocational Rehabilitation, 130 F.3d 1245, 1251 (7th Cir.1997). We pursue this no further because the district court correctly noted the judicial uncertainty then existing whether a prisoner could have a cause of action against the prison or state under ADA. Because that question was not settled for this circuit until Crawford, supra, in 1997 and Yeskey, supra, in 1998, individual defendants would be immune from suit for conduct in 1994.
 
 
 9
 Accordingly we affirm the judgment appealed from.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)