**Dean NAPOLITANO, Plaintiff–Appellee,**

v.

**Kim FLYNN, individually and Sheila Prue, individually and Stonewall, Inc., Defendants,**

**Kim Flynn, individually and Sheila Prue, individually, Defendants–Appellants.**

**No. 213, Docket 91–7508.**

United States Court of Appeals, Second Circuit.

Argued Oct. 1, 1991.

Decided Nov. 22, 1991.

Thomas C. Costello, Brattleboro, Vt., for plaintiff-appellee.

James F. Carroll (Powers, English & Carroll, of counsel) Middlebury, Vt., for defendants-appellants.

Before CARDAMONE, WALKER and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Plaintiff Dean Napolitano ("Napolitano") sued two police officers (the "Officers"), alleging that they had violated his rights under federal law (42 U.S.C. §§ 1983, 1985, 1986, and 1988), and his rights under Vermont state law as well. The suit was brought against the Officers in both their official and individual capacities.

The Officers moved for summary judgment, asserting immunity from suit in both their official and individual capacities. The United States District Court for the District of Vermont (Billings, *Chief Judge*) granted the Officers' motion for immunity from suit in their official capacities, but denied their motion for immunity in their individual capacities. The Officers now appeal.

We disagree with the district court's conclusion that the Officers were not entitled to immunity from suit in their individual capacities. We therefore reverse the order of the district court insofar as the order denied summary judgment to the Officers in their individual capacities, and remand for further proceedings.

## BACKGROUND

On November 22, 1986, Napolitano, who was then eighteen years old, travelled with several friends of about the same age, from their homes in Massachusetts to Brattleboro, Vermont. The group planned to spend the evening taking advantage of Vermont's liberal drinking laws, and then stay overnight at a local motel.[1] When they arrived in Vermont, a woman in the group named Donna Linnehan paid and registered for two rooms at the Colonial Motel in Brattleboro. The motel assigned rooms 265 and 266 to the group. After leaving their luggage in the rooms, several members of the group went into town to begin the evening's festivities.

The group journeyed to "Flat Street," a local Brattleboro bar, where they consumed an unknown quantity of alcoholic beverages. The group left Flat Street shortly before 2 a.m. Upon returning to the Colonial Motel, the group discovered that Donna Linnehan and an unidentified individual were now occupying room 265, and that the door to the room was locked. Members of the group demanded entry to the room, and began banging on the door to gain Linnehan's attention.

Disturbed by the commotion, Linnehan telephoned the front desk of the motel. August Schneider, who was in charge of the motel that evening, answered her call. Linnehan asked Schneider to tell the crowd to leave the motel. Schneider notified the Brattleboro police department, requesting a police officer to help him deal with the unruly crowd. The department dispatched the defendant Officers to the motel.

First to arrive was Officer Flynn, followed shortly by Officer Prue. Schneider advised the Officers that the crowd in rooms 265 and 266 was raising a ruckus, and asked them to expel the group from the motel. The Officers went to room 266, where they advised Napolitano and his friends that, at the request of the Colonial Motel management, they would have to leave the motel. Significantly, the Officers did not take any members of the group into police custody, nor did they place anyone under arrest.

The group packed up and set out to return to Massachusetts. Napolitano decided to ride with his friend Tim Andrews, who had been one of his drinking companions that evening. At approximately 3:25 a.m., Andrews fell asleep at the wheel, and his car crashed into a tree. Napolitano suffered a serious skull fracture. A blood alcohol test taken shortly after the accident registered Andrews' blood alcohol content at .09 percent.

Napolitano sued Stonewall, Inc. (the owner of the Colonial Motel), and Flat Street in

---

1. On November 22, 1986, the legal drinking age in Massachusetts was twenty-one. *See* Mass. Gen.L. ch. 138, § 34. Earlier, Vermont had raised the drinking age to twenty-one, but had "grandfathered" those reaching the age of eighteen by June 30, 1986. *See* Vt. Stat. Ann. tit. 7, §§ 601, 658.

Vermont Superior Court. Later, he amended his complaint to add claims against the Officers and the Brattleboro police chief, Charles Campbell, in both their individual and official capacities, and the town of Brattleboro as well. The amended complaint alleged negligence and recklessness against all defendants, and it also included charges that the Officers, Campbell and the town of Brattleboro had violated Napolitano's rights under 42 U.S.C. §§ 1983, 1985, 1986 and 1988.

All defendants joined in a petition to remove the case to the United States District Court for the District of Vermont. Jurisdiction for removal was based on the federal claims asserted against the Officers, Campbell, and the Town of Brattleboro, as well as the complete diversity of citizenship between Napolitano and all defendants.

After extensive discovery, all parties stipulated to the dismissal of Flat Street as a party-defendant. The remaining defendants (Stonewall, the Officers, Campbell, and the Town of Brattleboro) moved for summary judgment on all claims, state and federal. Napolitano also cross-moved to amend his complaint to state more clearly the basis of his federal law claims.

Following oral argument on the motions, the district court denied Stonewall's motion for summary judgment. The court granted summary judgment to the town of Brattleboro and also to Campbell in both his individual and official capacities. The court also granted summary judgment to the Officers in their official capacities, but declined to grant them summary judgment in their individual capacities. Finally, the court denied Napolitano's cross-motion to amend his complaint. The Officers now appeal the district court's denial of their motion for summary judgment in their individual capacities, and this is the sole issue on appeal.

**2.** We leave the district court to determine whether to dismiss Napolitano's federal law claims with or without prejudice. The parties have not briefed this question. We note, however, that if the district court dismisses the federal law claims without prejudice, and Napolita-

## DISCUSSION

### A. *Federal Law Claims*

As noted above, Napolitano sought leave to amend the federal law claims in his complaint. Without any explanation, the district court denied this motion. Napolitano does not seek to appeal this interlocutory order. *See D'Ippolito v. Cities Serv. Co.,* 374 F.2d 643, 648 (2d Cir.1967) (order denying leave to amend complaint not appealable until final judgment entered in district court); *see also* 15 Charles A. Wright, *et al.,* Federal Practice and Procedure § 3914 (1976). In his brief to this court, Napolitano now concedes that his federal law claims do not sufficiently allege a claim for relief. Based on his concession, we hold that the federal law claims in his complaint must be dismissed.

Our holding on this issue should not be read to signal a retreat from our view that a court should not dismiss a complaint without first giving the claimant an opportunity to be heard. *See Perez v. Ortiz,* 849 F.2d 793, 797–98 (2d Cir.1988). However, when, as here, a plaintiff admits that his complaint makes no cognizable claim for relief under federal law, we need not order a hearing to ascertain what we already know. We therefore remand Napolitano's federal law claims to the district court with an instruction to dismiss that portion of the complaint.[2]

### B. *State Law Claims*

Because there is diversity of citizenship between Napolitano and all defendants, we may still consider whether the Officers are entitled to summary judgment on Napolitano's state law claims. We must address initially whether the district court's denial of the Officer's motion for summary judgment is an appealable order.

■ The Officers claim that the doctrine of qualified immunity entitles them to sum-

no then chooses to replead, he will have to specifically state the precise constitutional rights that the Officers allegedly violated. *See Siegert v. Gilley,* — U.S. ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

mary judgment in their individual capacities. Although the substantive law of Vermont governs the applicability of qualified immunity to Napolitano's state law claims, *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), federal law determines the appealability of the district court's order. *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 199, 108 S.Ct. 1717, 1720, 100 L.Ed.2d 178 (1988).

▌ Generally, a court of appeals has jurisdiction of appeals only from "final" orders of a district court. 28 U.S.C. § 1291. An exception to the finality rule exists if the district court's order falls within

> that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.

*Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). An appealable "collateral order" under *Cohen* thus has two characteristics. First, the order must resolve a question which is separate from the merits of the plaintiff's action. Second, the question must be effectively unreviewable if an appeal has to await a final judgment. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978).

▌ The appealability of an interlocutory order denying a claim of qualified immunity was first addressed in *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). *Mitchell* held that qualified immunity is an *"immunity from suit* rather than a mere defense to liability," and is "effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526, 105 S.Ct. at 2815 (emphasis in original). Immunity from suit recognizes a right not to stand trial at all. The question whether a defendant is entitled to qualified immunity from suit is thus separate from the merits of the underlying action. *Id.* at

528, 529, 105 S.Ct. at 2816, 2817. If a defendant's claim of qualified immunity is erroneously denied, he will lose forever his right not to stand trial unless he can obtain immediate appellate review. *Id.* at 527, 105 S.Ct. at 2816. A denial of a claim of qualified immunity, then, is immediately appealable and need not await a final decision. *Id.*

▌ The plaintiff in *Mitchell* alleged claims under federal law only, and if Napolitano had raised viable claims under federal law, we would surely apply *Mitchell's* analysis. Here, however, Napolitano's *federal* law claims are being dismissed, and our sole concern is with Napolitano's *state* law claims. Thus, our determination of whether the Officers' qualified immunity claim is appealable turns on whether Vermont law, like federal law, holds that qualified immunity is an immunity from suit rather than simply a defense to substantive liability. *See Sorey v. Kellett,* 849 F.2d 960, 962 (5th Cir.1988).

Vermont law unequivocally follows *Mitchell's* reasoning that qualified immunity is an immunity from suit. *See, e.g., Murray v. White,* 155 Vt. 621, 587 A.2d 975, 978 (1991). *Murray* held that qualified immunity gives public officials the freedom to perform their duties without constantly being called upon to defend their actions in a lawsuit. *Id.* In line with *Mitchell, Murray* recognized that a government official effectively loses his right to be free from suit if he must await a final judgment to appeal a denial of qualified immunity. *Murray* also recognized that the right to be free from suit exists separately from the cause of action asserted by the plaintiff. *Id.* at 978–79. Because Vermont interprets qualified immunity as an immunity from suit, we hold that qualified immunity is a collateral right under Vermont law, and we, therefore, have jurisdiction over the Officers' appeal.

Turning to the merits of the Officers' claims, we review *de novo* a district court's decision concerning summary judgment. *Herbert Constr. Co. v. Continental Ins. Co.,* 931 F.2d 989, 993 (2d Cir.1991). Summary judgment must be granted if there is

"no genuine issue as to any material fact," and if the moving party shows that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view the evidence in the light most favorable to the non-moving party. *City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 45 (2d Cir.1988). Applying these hornbook principles to this case, we find that the district court improperly denied the Officers' motion for summary judgment. We hold, therefore, that the Officers are immune from suit on Napolitano's state law claims.

■ Mirroring the federal test for qualified immunity that was announced in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), Vermont law accords government officials qualified immunity if three conditions are met. First, the official's actions must be within the scope of his employment. Second, the official's actions must be discretionary, as opposed to ministerial. Finally, the official's actions must be in good faith. *Levinsky v. Diamond,* 151 Vt. 178, 185, 559 A.2d 1073, 1078 (1989), *overruled in part on other grounds by Muzzy v. State,* 155 Vt. 279, 583 A.2d 82 (1990).

Napolitano does not dispute that the Officers were acting within the scope of their employment when they ordered him and his friends to leave the Colonial Motel. Our inquiry thus focuses on the two remaining factors of the *Levinsky* test: (1) whether the Officers were performing discretionary functions; and (2) whether the Officers acted in good faith.

### 1. Discretionary Function

■ A government official's actions are "discretionary" when the official exercises professional judgment in performing the actions. *Levinsky,* 151 Vt. at 191, 559 A.2d at 1082. The official's actions are "ministerial," on the other hand, when "nothing is left to discretion," and the official acts according to "a definite duty, imposed by law...." *Libercent v. Aldrich,* 149 Vt. 76, 81, 539 A.2d 981, 984 (1987) (quoting *State v. Howard,* 83 Vt. 6, 14, 74 A. 392, 395 (1909)).

Napolitano asserts that the Officers simply parroted the Colonial Motel's request that he and his friends leave the motel. He further contends that the Officers were merely carrying out a duty imposed by Vermont law to remove trespassers from property at the owner's request. Thus, he argues that the Officers were performing ministerial functions. We find Napolitano's arguments unpersuasive.

The Officers arrived at the Colonial Motel to investigate a disturbance that had been reported to them by a motel employee. They went to the rooms occupied by Napolitano and his friends. The Officers spoke to several members of the group, and requested identification. They ultimately determined that the group should leave the motel. Each action the Officers took, from initial investigation of the incident, to ordering the group to leave, was based on their professional judgment as police officers. *Cf. Levinsky,* 151 Vt. at 191, 559 A.2d at 1082 (decision of assistant attorney general to investigate and prosecute involved significant professional judgment and was therefore discretionary). Announcing that the Colonial Motel wanted the group to leave the motel does not, as Napolitano argues, transform the Officers' actions into ministerial acts.

We are also unconvinced by Napolitano's argument that the Colonial Motel considered him and his friends trespassers, and therefore the Officers simply carried out their "ministerial" duty to remove trespassers at the motel's behest. A police officer's duty to remove trespassers from property is obviously predicated on at least the appearance of a trespassing violation. Under Vermont law, a trespass occurs when a person "enters or remains on any land or in any place as to which notice against trespass is given," and does so "without legal authority or the consent of the person in lawful possession." Vt. Stat. Ann. tit. 13, § 3705. There is no indication that Napolitano and his friends were trespassing at the Colonial Motel. The motel manager called the Brattleboro police because of the noise caused by Napolitano and his friends. At no time did the manag-

er intimate to the Officers that the group was "trespassing" at the motel. The Officers never said that the group was trespassing, and no subsequent action for trespass has been brought by the Colonial Motel against Napolitano or his friends.

In any event, we do not attach a great deal of significance to Napolitano's argument that the Officers "ministerially" ejected him and his friends from the motel as trespassers. Because the Officers later made an independent decision to let the group return to Massachusetts, rather than take them into protective custody, the Officers' actions were clearly discretionary.

### 2. Good Faith

■■■■ The more difficult question is whether the Officers acted in good faith. Vermont recognizes a presumption of good faith on the part of government officials, which the plaintiff can overcome if he satisfies a two-part test. The plaintiff must first assert a "clearly established" right. *Levinsky*, 151 Vt. at 190–91, 559 A.2d at 1082 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). A "clearly established" right is more than an assertion by the plaintiff that he has a generic right to not suffer the torts alleged in his complaint. Rather, a "clearly established" right is one that is specifically provided by existing law. *See Murray*, 587 A.2d at 980. If the plaintiff demonstrates that his clearly established rights have been violated, he must then show that the government official reasonably should have known that his actions violated the rights asserted by the plaintiff. *Levinsky*, 151 Vt. at 190, 559 A.2d at 1082 (citing *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738). Unless the plaintiff successfully meets both prongs of this test, Vermont law considers the official's actions to be in good faith.

■■■■ The parties have not invited our attention to any Vermont statute or case that provides Napolitano a clearly established right that the Officers violated. Napolitano asserts that the Officers were reckless and negligent in failing to ensure that no member of the group would drive an automobile while intoxicated. We are naturally troubled by the possibility that the Officers may have used poor judgment in ordering Napolitano and his friends to leave the Colonial Motel. Nonetheless, Napolitano does not have a clearly established right to ensure that police officers correctly exercise their judgment at all times. *Cf. Levinsky*, 151 Vt. at 190–91, 559 A.2d at 1082 (false announcement by assistant state attorney general that warrant existed for plaintiff's arrest was an error of judgment, but did not violate clearly established right of plaintiff).

The only statute that even arguably gives Napolitano a right upon which to base his suit is Vt.Stat.Ann. tit. 33, § 708(b) ("Section 708(b)"):

> When a law enforcement officer encounters a person who, in the judgment of the officer, is incapacitated ... the person shall be taken into protective custody by the officer. The officer shall transport the incapacitated person directly to an approved alcohol treatment program with detoxification capabilities or to the emergency room of a licensed general hospital for treatment.... The period of protective custody shall end when the person is released to an alcohol crisis team, a designated alcohol counselor, a clinical staff person of an approved alcohol treatment program with detoxification capabilities, or a professional medical staff person at a licensed general hospital emergency room.

Vermont law defines an "incapacitated" person as one whose use of alcohol places him in such a state of intoxication that either (a) he needs medical care to assure his safety; or (b) he presents a direct threat to the safety of others. Vt.Stat. Ann. tit. 33, § 702(9).

There is no evidence in the record that Andrews was, in fact, "incapacitated" when the Officers arrived at the Colonial Motel. Even if we assume that Andrews was incapacitated, the Vermont courts have not construed Section 708(b) to impose a duty upon which a police officer may be sued. True, the Vermont Supreme Court has noted in *dictum* that Section 708(b)

*"may* create a civil duty on the part of a law enforcement officer confronted with an incapacitated or intoxicated person." *State v. Merritt,* 149 Vt. 529, 530, 546 A.2d 791, 792 (1988) (emphasis added). The *Merritt* court, however, declined to address definitively whether Section 708(b) created a civil duty, and Vermont courts have not faced this question since *Merritt.* The Vermont legislature has not enacted the *Merritt* dictum into law.

In the absence of clear guidance from either the Vermont legislature or courts, we are compelled to hold that the *Merritt* dictum, standing alone, is insufficient to create a "clearly established" right upon which Napolitano can base a suit against the Officers. Thus, we must hold that the Officers acted in good faith when they ordered Napolitano and his friends to leave the Colonial Motel.

Our holding that the Officers acted in good faith is buttressed by Vermont's public policy that "[government] officials should fear suit only where ... the unlawfulness of their acts is apparent." *Murray,* 587 A.2d at 981. Litigation against a government official subjects him to extensive discovery, as well as the high financial and personal costs of defending his actions in court. *Id.* at 978. Vermont public policy recognizes that government officials must be free to perform their jobs without concern that the Damoclean sword of litigation will fall upon them.

This is not to say that government officials should be given free reign to act with impunity. Qualified immunity, therefore, provides a fulcrum to balance an aggrieved party's right to sue for his injuries against a government official's ability to function effectively in his job. When a public official violates clearly established rights, the public interest demands that he account for the injuries he causes. But when, as here, the official's actions do not implicate clearly established rights, the public interest is best served by not requiring the official to justify his actions in court.

### CONCLUSION

The Officers were acting within the scope of their authority as police officers and were exercising discretion when they ordered Napolitano and his friends to leave the Colonial Motel. Their actions did not violate any of Napolitano's clearly established rights under Vermont law. We hold, therefore, that the Officers are entitled to immunity from suit on Napolitano's state law claims. Because Napolitano has conceded that his complaint does not assert any cognizable federal law claims, we hold that the federal law claims of Napolitano's complaint must be dismissed. Accordingly, the order of the district court is reversed, and the case is remanded to the district court with instructions to dismiss Napolitano's federal law claims, and to grant summary judgment to the Officers on Napolitano's state law claims.