In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2173

Marcella Richman, Individually and
as Special Administrator of the Estate
of Jack B. Richman, deceased,

Plaintiff-Appellee,

v.

Michael Sheahan, in his Official Capacity
as Sheriff of Cook County, et al.,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 7350--Joan B. Gottschall, Judge.

Argued December 6, 2000--Decided October 16, 2001

  Before Bauer, Posner, and Williams, Circuit
Judges.

  Williams, Circuit Judge.  Jack Richman
died shortly after fourteen sheriff's
deputies restrained him during his
mother's appearance before an Illinois
judge on a traffic violation. Marcella
Richman, on her own behalf and on behalf
of her son's estate, brought federal and
state claims against the sheriff's
deputies in their individual capacities
and against Cook County Sheriff Michael
Sheahan in his official capacity. The
defendants filed a motion to dismiss
based in part on absolute, Eleventh
Amendment, and state sovereign immunity.
We agree with the district court that the
deputies are not entitled to absolute
immunity, and therefore affirm the
court's denial of their motion to dismiss
the sec. 1983 claims. Because we cannot
conclude as a matter of law that the
sheriff's alleged unconstitutional policy
regarding training and supervision of
deputies represents state policy for
purposes of Eleventh Amendment immunity,
we affirm the district court's denial of
the sheriff's motion to dismiss. However,
we conclude that the deputies' conduct
would be attributed to the state for
purposes of Illinois sovereign immunity,

and therefore reverse the district court's denial of the deputies' motion to dismiss the state law claims.

## I. BACKGROUND

Marcella Richman appeared in the Circuit Court of Cook County, Illinois, to challenge a traffic citation./1 She was accompanied by her son, Jack Richman, who planned to testify as a witness. The Richmans waited in the courtroom for several hours before their case was called, and then the judge continued the hearing to a future date. The Richmans attempted to ask a question but the judge quieted them, and when Jack continued to speak, the judge ordered him restrained. Two Cook County sheriff's deputies began to take him into custody and twelve more deputies then entered the courtroom. According to the complaint, the fourteen deputies attacked Jack, forced him to the floor, sat on and handcuffed him. Jack, who was physically disabled and required the use of a cane, did not resist the deputies' attempt to restrain him, nor did his mother, who was restrained by four other deputies. While Jack was handcuffed and on the floor, he emptied his bladder and bowels, and he appeared to have stopped breathing. Paramedics rendered emergency assistance at the scene and then transported him to a hospital, where he was pronounced dead.

Marcella Richman's amended complaint seeks damages against the deputies in their individual capacities pursuant to 42 U.S.C. sec. 1983, alleging that the deputies' conduct violated her and her son's right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments. The complaint also includes sec. 1983 claims against Cook County Sheriff Michael Sheahan in his official capacity, alleging that he failed adequately to train and supervise the deputies in their duties "to refrain from using excessive force in effecting seizures of citizens." The complaint also includes claims against the deputies under the Illinois Wrongful Death Act, 740 Ill. Comp. Stat. 180/1, and the Survival Act, 755 Ill. Comp. Stat. 5/27-6./2

## II. ANALYSIS

On appeal, we must decide whether the

district court erred in denying the defendants' motion to dismiss based on (1) the deputies' claim to absolute immunity; (2) the sheriff's claimed right, under the Eleventh Amendment, to be free from suit in federal court; and (3) the deputies' claim to sovereign immunity under the Illinois State Lawsuit Immunity Act, 745 Ill. Comp. Stat. 5/1, and Court of Claims Act, 705 Ill. Comp. Stat. 505/8. We review each of these questions of law de novo. DeGenova v. Sheriff of DuPage County, 209 F.3d 973, 975 (7th Cir. 2000); Hammond v. Kunard, 148 F.3d 692, 695 (7th Cir. 1998); cf. Benning v. Bd. of Regents, 928 F.2d 775, 778-80 (7th Cir. 1991).

A. Absolute Immunity--sec. 1983 Claims Against the Deputies

The parties are correct that we have jurisdiction, under the collateral order doctrine, to review the district court's decision to deny the defendants' motion to dismiss based on absolute immunity. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1995); Hammond, 148 F.3d at 695.

The ordinary rule is that qualified--and not absolute--immunity is sufficient to protect law enforcement officers in the conduct of their official duties. Malley v. Briggs, 475 U.S. 335, 340-41 (1986); Pierson v. Ray, 386 U.S. 547, 557 (1967). The deputies argue that the ordinary rule does not apply in this case because they were required to execute the judge's order, and that quasi-judicial immunity, a form of absolute immunity derived from judicial immunity, is appropriate for officers providing courtroom security. We disagree.

We begin our analysis with the fundamental principle that judges are entitled to absolute immunity from damages for their judicial conduct. Mireles v. Waco, 502 U.S. 9, 11-12 (1991); Forrester v. White, 484 U.S. 219, 225-29 (1988). Judicial immunity was recognized at common law "as a device for discouraging collateral attacks and thereby helping to establish appellate procedures as the standard system for correcting judicial error" and to "protect[ ] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants." Forrester, 484 U.S. at 225; see also

Pierson, 386 U.S. at 554; Bradley v. Fisher, 80 U.S. 335, 347 (1872).

The absolute immunity afforded to judges has been extended to apply to "quasi-judicial conduct" of "[n]on-judicial officials whose official duties have an integral relationship with the judicial process." Henry v. Farmer City State Bank, 808 F.2d 1228, 1238 (7th Cir. 1986). For example, we have applied absolute immunity to officials engaged in quasi-judicial decision making, such as members of a parole board. See Wilson v. Kelkhoff, 86 F.3d 1438, 1443-44 (7th Cir. 1996); Walrath v. United States, 35 F.3d 277, 281-82 (7th Cir. 1994). For these officers, whose conduct is "functionally comparable" to those of judges, Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993); Wilson, 86 F.3d at 1443, the rationale for applying absolute immunity is much the same as for judges: that officials making quasi-judicial decisions should be free of "'the harassment and intimidation associated with litigation.'" See Kincaid v. Vail, 969 F.2d 594, 600-01 (7th Cir. 1992) (quoting Burns v. Reed, 500 U.S. 478, 494 (1991)). The deputies do not claim that they exercise a comparable form of discretionary decision making./3

The deputies instead rely on a different sort of quasi-judicial immunity, which we have recognized for some officials whose functions are further removed from the core dispute resolution function of judges. "[W]hen functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer, we have held that that officer's immunity is also available to the subordinate." Kincaid, 969 F.2d at 601. The policy justifying an extension of absolute immunity in these circumstances is to prevent court personnel and other officials from becoming a "'lightning rod for harassing litigation' aimed at the court." See Ashbrook v. Hoffman, 617 F.2d 474, 476 (7th Cir. 1980) (quoting Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno, 547 F.2d 1, 3 (1st Cir. 1976)); see also Kincaid, 969 F.2d at 601; Mays v. Sudderth, 97 F.3d 107, 113 (5th Cir. 1996); Coverdell v. Dept. of Social & Heath Servs., 834 F.2d 758, 765 (9th Cir. 1987).

We have not yet had occasion to consider whether law enforcement officers charged with using unreasonable force when seizing a person pursuant to a judge's order are entitled to quasi-judicial immunity. Two other circuit courts of appeal have addressed this question, with different results. In Martin v. Board of County Commissioners, 909 F.2d 402, 405 (10th Cir. 1990), the Tenth Circuit held that officers charged with employing excessive force to execute a bench warrant were not entitled to absolute immunity. The Tenth Circuit reasoned that, because an order to take someone into custody carries with it an implicit order not to use unreasonable force, the judge's order would not shield the officers from a claim challenging the manner in which they enforced the order. Id. The court distinguished its earlier holding in Valdez v. City of Denver, 878 F.2d 1285 (10th Cir. 1989), that law enforcement officers enforcing a contempt order were entitled to quasi-judicial immunity for claims of false arrest and imprisonment. In Valdez, the claim was not directed at the manner in which the judge's order was executed, but instead at conduct expressly prescribed by the order. Because of this difference, the court held that the policies underlying the extension of absolute immunity--not holding officials accountable for conduct they are powerless to avoid--did not apply. Martin, 909 F.2d at 404-05.

The Eighth Circuit reached the opposite conclusion in Martin v. Hendren, 127 F.3d 720 (8th Cir. 1997), a case, like this one, in which the plaintiff was restrained in the courtroom by order of the judge. The Eighth Circuit rejected the Tenth Circuit's reasoning, and held that the alleged impropriety of the officers' acts (using excessive force to effectuate the seizure) did not strip the acts of their quasi-judicial character. Id. at 721-22. The Eighth Circuit relied on the Supreme Court's statement in Mireles that "'[i]f judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'" 127 F.3d at 722 (quoting Mireles, 502 U.S. at 12-13).

We believe that the Eighth Circuit stretches the reasoning in Mireles too

far, and confuses the question suggested by the Tenth Circuit in Martin--whether the challenged conduct was specifically ordered by the judge--with the separate question of whether the conduct was lawful or exceeded the actor's authority. In Mireles, the plaintiff challenged the judge's order directly--that is, by suing the judge. Mireles holds that when the challenged conduct is the judge's own decision making, the applicability of absolute immunity cannot turn on the correctness of the judge's decision. 502 U.S. at 12-13. By contrast, when the conduct directly challenged is not the judge's decision making, but the manner in which that decision is enforced, we agree with the Tenth Circuit that the law enforcement officer's fidelity to the specific orders of the judge marks the boundary for labeling the act "quasi-judicial." See Martin, 909 F.2d at 404-05.

More important, as Judge Lay points out in his dissent in Hendren, Mireles "directs that the facts of the incident must be evaluated in relation to the general function of the officer." Hendren, 127 F.3d at 723 (Lay, J., dissenting). In making this evaluation, "we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." Forrester, 484 U.S. at 224.

Our quasi-judicial immunity cases demonstrate that the primary function to be protected is judicial or quasi-judicial decision making. This is true of cases challenging discretionary conduct by a quasi-judicial body like a parole board, see Wilson, 86 F.3d at 1443-44, and it is also true when the lawsuit is aimed at persons integral to the judicial process but whose conduct is not "functionally comparable" to a judge's. See Antoine, 508 U.S. at 436; Wilson, 86 F.3d at 1443. For example, we have recognized absolute immunity for law enforcement officials when the challenged conduct (the mere act of enforcing a foreclosure judgment) was specifically ordered by the judge. See Henry, 808 F.2d at 1238-39. The source of the plaintiff's wrong in Henry was the judge's order

itself, and we reasoned that a suit against the officers was not the appropriate vehicle for challenging the validity of that order. See id. Under those circumstances, extension of absolute immunity is not primarily to protect the enforcement function performed by the deputies, but rather to protect the judicial decision-making function by discouraging collateral attacks and encouraging appeals. See id. at 1239. It further avoids the "untenable result" of requiring "sheriffs and other court officers who enforce properly entered judgments pursuant to facially valid court orders to act as appellate courts, reviewing the validity of both the enforcement orders and the underlying judgments before proceeding to collect on them." Id.; see also Mays, 97 F.3d at 113; Valdez, 878 F.2d at 1289.

Similarly, for court personnel and adjuncts who do not exercise a discretionary function comparable to a judge's, the justification for extending absolute immunity is most compelling when the lawsuit challenges conduct specifically directed by the judge, and not simply the manner in which the judge's directive was carried out. See Kincaid, 969 F.2d at 601 (clerk who refused to accept filing of complaint at the direction of the judge was entitled to quasi-judicial immunity); Dellenbach v. Letsinger, 889 F.2d 755, 763 (7th Cir. 1989) (court reporter and clerks who told plaintiff to pay for unnecessary transcript at the request of the judge were entitled to quasi-judicial immunity); Eades v. Sterlinske, 810 F.2d 723, 726 (7th Cir. 1987) (clerk and court reporter who prepared and filed a false certificate summarizing an instruction conference at the direction of the judge were entitled to quasi-judicial immunity); cf. Lowe v. Letsigner, 772 F.2d 308, 313 (7th Cir. 1985) (court clerk who allegedly concealed entry of order was not entitled to absolute immunity for his ministerial act of failing to type and send notice after entry of judgment)./4 By contrast, the Supreme Court has held that a court reporter was not entitled to absolute immunity for her own misconduct (losing her trial notes and failing to provide a transcript of the trial), reasoning that "court reporters do not exercise the kind of judgment that is protected by the

doctrine of judicial immunity." See Antoine, 508 U.S. at 437.

The policies articulated in our quasi-judicial immunity cases have less force when, as in this case, the challenged conduct is the manner in which the judge's order is carried out, and not conduct specifically directed by a judge. Reading Richman's complaint in the light most favorable to her, the claim is not that the judge ordered the deputies to use unreasonable force, but that the deputies exceeded the judge's order by the manner in which they executed it. The claim for damages in this case is not therefore a collateral attack on the judge's order (an order that Richman concedes was valid), and an appeal of the judge's order would provide no remedy. Similarly, the deputies are not being called upon to answer for wrongdoing directed by the judge, but instead for their own conduct. And that conduct--the manner in which they enforced the judge's order--implicates an executive, not judicial, function.

Moreover, we believe that the policies articulated by the Eighth Circuit in Hendren are insufficient to justify the extension of absolute immunity urged here. The Eighth Circuit expressed alarm at the possibility that exposing court security officers to "potential liability for acting on a judge's courtroom orders could breed a dangerous, even fatal, hesitation." See Hendren, 127 F.3d at 722. But without in any way minimizing the vital and often valorous service of those who provide security to judges and other participants in the judicial process, we note that the need for immediate action in the face of potentially fatal consequences is not a situation unique to courtrooms, and yet qualified immunity (which takes into account the particular circumstances faced by the officers) is the rule for law enforcement officers of all kinds, see Malley, 475 U.S. at 340-41; Pierson, 386 U.S. at 557, including secret service officers charged with guarding the President. See Hunter v. Bryant, 502 U.S. 224, 228 (1991) (per curiam). That the conduct occurs in the courtroom, does not, in our opinion, justify our applying a different rule. In this regard, the Supreme Court has cautioned against our being overly solicitous of claims of immunity

involving the judicial function:

One can reasonably wonder whether judges, who have been primarily responsible for developing the law of official immunities, are not inevitably more sensitive to the ill effects that vexatious lawsuits can have on the judicial function than they are to similar dangers in other contexts. . . . Although Congress has not undertaken to cut back the judicial immunities recognized by this Court, we should be at least as cautious in extending those immunities as we have been when dealing with officials whose peculiar problems we know less well than our own.

Forrester, 484 U.S. at 226 (citation omitted).

Finally, the only difference (in terms of liability for damages) between the absolute immunity urged by the deputies here and the qualified immunity that is the ordinary rule for law enforcement officers is that the former shields even knowingly unlawful or plainly incompetent acts. See Malley, 475 U.S. at 341. Absolute immunity provides an additional benefit even for officers whose actions are reasonable because it allows them to avoid altogether the litigation that would be required in order to determine their entitlement to qualified immunity. The tradeoff, however, is that even victims of knowingly unlawful acts go without a remedy, and for that reason absolute immunity is applied with caution and only when it is necessary to protect the function at issue. See Forrester, 484 U.S. at 230; Antoine, 508 U.S. at 432 n.4; Burns v. Reed, 500 U.S. 478, 486–87 (1991). A secure courtroom is necessary to protect the judicial function from interference or intimidation; this function is adequately protected by immunizing a judge's order to restrain a person, see Mireles, 502 U.S. at 12-13, and by barring lawsuits that challenge a judge's decision through claims aimed at officers who do nothing more than implement it. See Henry, 808 F.2d at 1238-39. It is not necessary to the judicial function, in our judgment, to also deny a remedy to plaintiffs who were harmed not by the judge's order, but by unlawful conduct by those who enforce it. We therefore affirm the district court's denial of the deputies' motion to dismiss

the plaintiff's sec. 1983 claims./5

B. The Eleventh Amendment--sec. 1983
Claims Against the Sheriff

Sheriff Sheahan claims that the district court erred in denying his motion to dismiss, in which he asserted that the Eleventh Amendment barred the plaintiff's sec. 1983 claim alleging that he failed adequately to train and supervise the deputies. We have jurisdiction, under the collateral order doctrine, to review the district court's denial of the sheriff's claim to Eleventh Amendment immunity. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146-47 (1993); DeGenova, 209 F.3d at 975; Franklin v. Zaruba, 150 F.3d 682, 684 (7th Cir. 1998). Because we cannot conclude as a matter of law that the alleged unconstitutional policy of the sheriff's office represents state policy, we affirm the district court's denial of the sheriff's motion to dismiss.

Richman sued Sheahan in his official capacity, and therefore the claim is against the entity of which he is an agent. See Kentucky v. Graham, 473 U.S. 159, 169 (1985); Scott v. O'Grady, 975 F.2d 366, 369 (7th Cir. 1992). The Eleventh Amendment does not apply to suits against counties or other local government entities. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977); Scott, 975 F.2d at 370. Under Illinois law, sheriffs are classified as county, not state, officials, and when the sheriff "performs his duties as the principal executive officer or chief law enforcement officer of the county, he acts as a county official" and the Eleventh Amendment does not apply. Scott, 975 F.2d at 371; Franklin, 150 F.3d at 684; Ruehman v. Sheahan, 34 F.3d 525, 528 (7th Cir. 1994). However, a county sheriff may act as an arm of the state when performing certain functions. Ruehman, 34 F.3d at 528; Scott, 975 F.2d at 371. When he does so, a suit challenging that conduct is against the state, and the claim for damages may not be brought in federal court. Ruehman, 34 F.3d at 528; Scott, 975 F.2d at 371.

In determining whether the sheriff is an agent of Illinois government when performing particular functions, we have

looked to the degree of control exercised by Illinois over the conduct at issue and whether the Eleventh Amendment policy of avoiding interference with state (as opposed to county) policy is offended by the lawsuit. See Ruehman, 34 F.3d at 529; Scott, 975 F.2d at 371. In Scott, for example, deputy sheriffs were sued in their official capacities for executing a writ of assistance issued by an Illinois court. We noted that because the sheriff had "a statutory, non-discretionary duty to execute this writ," the deputies were acting as state, not county, officers. Scott, 975 F.2d at 371.

But not all actions associated with carrying out the deputies' duty to execute the state court's orders are actions on behalf of the state. For example, in Ruehman, the plaintiff challenged the sheriff's design of a system to track warrants issued by state courts. We noted, consistent with Scott, that an official-capacity suit challenging the deputies' execution of the warrants would be a suit against the state because the warrants were issued by the Illinois courts. 34 F.3d at 528-29. However, the warrant-tracking system that was at the heart of the plaintiff's complaint was designed and implemented by the sheriff and county government, and did not therefore implicate state policy: "State law requires the Sheriff to arrest the right people but says nothing about how he should do it." Id. at 529.

As in Ruehman, the claim against the sheriff in this case does not challenge the mere execution of the court's order by the sheriff's office. Nor does it seek to hold the sheriff liable as the deputies' employer, a theory that is foreclosed by Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 692 (1978). Instead, Richman's claim against the sheriff's office is based on its alleged unconstitutional policy (its failure adequately to train and supervise the deputies in deliberate indifference to the plaintiff's rights) regarding the use of force when arresting persons in the courtroom pursuant to a judge's order. Therefore, we must determine whether that alleged policy represents state policy or instead county policy. See McMillian v. Monroe County, Alabama, 520 U.S. 781, 784 (1997); DeGenova, 209 F.3d at 975-76; Ruehman, 34 F.3d at 529.

Sheriff Sheahan does not contend that Illinois has any policy regarding, or exercises any control over, his training or supervision of deputies in the use of force when executing court orders. Cf. Ruehman, 34 F.3d at 529; DeGenova, 209 F.3d at 976. Instead, the sheriff relies on an Illinois statute that requires the sheriff to obey orders of Illinois courts:

Each sheriff shall, in person or by deputy, county corrections officer, or court security officer, attend upon all courts held in his or her county when in session, and obey the lawful orders and directions of the court, and shall maintain the security of the courthouse.

55 Ill. Comp. Stat. 5/3-6023.

We are unable to conclude from this provision that the county sheriff operates as a state officer with respect to the conduct alleged here. Aside from the explicit command that sheriffs obey orders of Illinois courts, Illinois law assigns the responsibility for courtroom security generally to the county sheriff. Id. The sheriff has no discretion in whether to obey a judge's orders, but we are aware of no state policy directing the sheriff's actions regarding the training and supervision of deputies in the use of force in carrying out state court orders. The evidence may show otherwise, but at this stage of the proceedings, we cannot conclude as a matter of law that the alleged unconstitutional policy represents state policy. Therefore, we affirm the district court's denial of Sheriff Sheahan's motion to dismiss./6

C. Sovereign Immunity--State Law Claims Against the Deputies

The deputies moved to dismiss the state wrongful death and survival claims, asserting that they were entitled to sovereign immunity under the Illinois State Lawsuit Immunity Act, 745 Ill. Comp. Stat. 5/1, and Court of Claims Act, 705 Ill. Comp. Stat. 505/8. The district court denied the deputies' motion, holding that the lawsuit was not a suit against the state for purposes of Illinois sovereign immunity. On appeal, the deputies argue that the district court's decision was wrong as a matter of

Illinois law. We agree.

The Illinois State Lawsuit Immunity Act, 745 Ill. Comp. Stat. 5/1, provides that the State of Illinois is immune from suit in any court, except as provided in the Illinois Court of Claims Act, 705 Ill. Comp. Stat. 505/8 (and other statutes not relevant here), which vests jurisdiction over state tort claims against the state in the Illinois Court of Claims. These state immunity rules apply to Richman's state law claims in federal court. Benning v. Bd. of Regents, 928 F.2d 775, 778-79 (7th Cir. 1991); Magdziak v. Byrd, 96 F.3d 1045, 1048 (7th Cir. 1996).

Under Illinois law, a claim against individual officers will be considered a claim against the state, even when, as here, the officials are sued in their individual capacities, if "judgment for the plaintiff could operate to control the actions of the State or subject it to liability." Currie v. Lao, 592 N.E.2d 977, 980 (Ill. 1992); Feldman v. Ho, 171 F.3d 494, 498 (7th Cir. 1999). If the state law claim is deemed to be against the state, then it must be dismissed. This is because, under Illinois law, the deputies would have absolute immunity, and under the Eleventh Amendment, the claim for damages against the state may not be brought in federal court. Feldman, 171 F.3d at 498. Either way, the collateral order doctrine provides the basis for appellate jurisdiction under the principles of Mitchell, 472 U.S. at 525-30, and Metcalf & Eddy, 506 U.S. at 145-46. See Griesel v. Hamlin, 963 F.2d 338, 340-41 (11th Cir. 1992) (per curiam) (holding that denial of officer's immunity under state law is an immediately appealable collateral order); Napolitano v. Flynn, 949 F.2d 617, 621 (2d Cir. 1991) (same).

Deputy sheriffs executing orders of the court may be agents of the state for purposes of Illinois sovereign immunity. Alencastro v. Sheahan, 698 N.E.2d 1095, 1101 (Ill. App. Ct. 1998). An agent's conduct will be attributed to the state for purposes of sovereign immunity if: "'(1) [there are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact

of State employment; and (3) . . . the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.'" Healy v. Vaupel, 549 N.E.2d 1240, 1247 (Ill. 1990) (quoting Robb v. Sutton, 498 N.E.2d 267, 272 (Ill. App. Ct. 1986)); Benning, 928 F.2d at 779. "Sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority." See Nichol v. Stass, 735 N.E.2d 582, 586 (Ill. 2000); Healy, 549 N.E.2d at 1247; see also Feldman, 171 F.3d at 498 ("Illinois follows the federal practice by making an exception for situations in which the public employee did not act within the scope of his employment or violated the Constitution.").

Applying these principles, we conclude that Illinois would consider the wrongful death and survival claims against the deputies to be against the state. Richman's state wrongful death and survival claims are not dependant on the alleged constitutional violation, but instead on a theory of wilful and wanton negligence, so the exception to immunity for unconstitutional conduct does not apply. Cf. Medina v. City of Chicago, 606 N.E.2d 490, 498 (Ill. App. Ct. 1992) (holding that there was no inconsistency between jury's verdict for plaintiff on wrongful death claim and for defendant on sec. 1983 claim of excessive force: "Two different standards are involved."); Leavitt v. Farwell Tower Ltd. P'ship, 625 N.E.2d 48, 52 (Ill. App. Ct. 1993) (wrongful death claim requires a breach of a duty, owed to the decedent, which proximately caused decedent's death, and pecuniary damages). Furthermore, Richman does not allege that the deputies' conduct was not within their normal duties, and the duty owed to Jack Richman was owed by virtue of the deputies' obligation to enforce the state court's order. The critical question, then, for determining the deputies' entitlement to sovereign immunity is whether the deputies acted beyond the scope of their authority. See Healy, 549 N.E.2d at 1247; Benning, 928 F.2d at 780-81.

As we noted earlier in this opinion (for purposes of determining the deputies' entitlement to quasi-judicial immunity),

Richman does not allege that the deputies' conduct was specifically authorized by the Illinois judge. However, for purposes of determining whether an agent's acts are within the scope of his authority, the fact that the agent's act was not specifically authorized is not dispositive, so long as it is of the general kind he is authorized to perform, and is motivated, at least in part, by a purpose to serve the principal./7 See Janes v. Albergo, 626 N.E.2d 1127, 1132-33 (Ill. App. Ct. 1993); Gaffney v. City of Chicago, 706 N.E.2d 914, 919-20 (Ill. App. Ct. 1998); Mitchell v. Norman James Constr. Co., 684 N.E.2d 872, 878 (Ill. App. Ct. 1997);Sunseri v. Puccia, 422 N.E.2d 925, 930 (Ill. App. Ct. 1981). Similarly, if there are no allegations that the defendant was acting for a purpose unrelated to his employment, the fact that the conduct was wilful and wanton does not take the conduct outside the defendant's scope of agency for purposes of sovereign immunity. See Janes, 626 N.E.2d at 1132; Rembis v. Bd. of Trustees, 618 N.E.2d 797, 799-800 (Ill. App. Ct. 1993); Campbell v. White, 566 N.E.2d 47, 53-54 (Ill. App. Ct. 1991). Richman alleges that the deputies' conduct was wilful and wanton, but there is nothing in the complaint that would indicate that the deputies' conduct was motivated by a purpose other than executing the judge's order. We therefore conclude that the deputies' actions were within the scope of their authority for purposes of Illinois sovereign immunity.

Because we conclude that the deputies' acts are attributable to the state for purposes of sovereign immunity under the Illinois State Lawsuit Immunity Act and Court of Claims Act, we reverse the district court's decision denying the deputies' motion to dismiss the state law claims.

III.  CONCLUSION

We agree with the district court that the deputies are not entitled to absolute immunity, and therefore Affirm that portion of the district court's order denying the deputies' motion to dismiss Richman's sec. 1983 claims. Because we cannot conclude as a matter of law that the alleged unconstitutional policy at issue here was state policy for purposes

of the Eleventh Amendment, we Affirm that portion of the district court's order denying the sheriff's motion to dismiss Richman's sec. 1983 claims. Finally, we conclude that the deputies' conduct would be attributed to the state for purposes of sovereign immunity under the Illinois State Lawsuit Immunity Act and Court of Claims Act, and therefore Reverse that portion of the district court's order denying the deputies' motion to dismiss the state law claims.

FOOTNOTES

/1 This version of events is from the allegations of Richman's amended complaint, which we accept as true for purposes of reviewing the defendants' motion to dismiss. See Hammond v. Kunard, 148 F.3d 692, 695 (7th Cir. 1998).

/2 Other defendants and claims were dismissed below and are not involved in this appeal.

/3 The deputies characterize their conduct as "classically ministerial," that is, without the exercise of their own discretion. See Black's Law Dictionary 1011 (7th ed. 1999). At common law, such conduct by a sheriff was not entitled to absolute immunity. See Thomas M. Cooley, Law of Torts, 376, 392-98 (Chicago, Callaghan 1880); see also Floyd R. Mechem, Public Offices and Officers, sec.sec. 636-38 (Chicago, Callaghan 1890).

/4 The quasi-judicial immunity cases from other circuits cited by the deputies similarly involved challenges to conduct prescribed by the court's order or direction. See Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 772-73 (3d Cir. 2000) (court administrator entitled to immunity for damages for release of information ordered by a judge); Mays, 97 F.3d at 108, 114 (official entitled to quasi-judicial immunity for "strict compliance" with facially valid order, but not for conduct that exceeded the scope of the order); Roland v. Phillips, 19 F.3d 552, 556-57 (11th Cir. 1994) (sheriffs entitled to quasi-judicial immunity for executing a facially valid court order); Coverdell, 834 F.2d at 764-65 (child protective services worker entitled to quasi-judicial immunity for executing order to apprehend a child); Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994) (court official entitled to quasi-judicial immunity for carrying out the order of the judge); Robinson v. Freeze, 15 F.3d 107, 109 (8th Cir. 1994) (holding that officers would be entitled to absolute immunity only for conduct "specifically ordered by the trial judge and related to the judicial function"); Valdez, 878 F.2d at 1289-90 (officers entitled to quasi-

judicial immunity for enforcing contempt order).

/5 This opinion has been circulated to the full court before release in accordance with Circuit Rule 40(e). A majority did not favor a rehearing en banc on the question of the deputies' entitlement to quasi-judicial immunity. Judge Bauer voted to grant rehearing en banc.

/6 Sheriff Sheahan's claim to absolute immunity is without merit because the suit is against him in his official capacity. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166 (1993). Also without merit is his claim that he cannot be liable if the deputies are immune. The sheriff relies on Tesch v. County of Green Lake, 157 F.3d 465, 477 (7th Cir. 1998), which held that without an underlying constitutional violation, there can be no liability on a failure to train theory. Id. However, if there is a constitutional violation (a question we do not address here), an officer's immunity from damages does not negate the existence of that violation.

/7 On this question we are guided by Illinois law of sovereign immunity, which involves different considerations than the principles underlying the extension of quasi-judicial immunity to law enforcement officers on a sec. 1983 claim.

BAUER, Circuit Judge, dissenting. I respectfully dissent. The majority finds Martin v. Board of County Commissioners, 909 F.2d 402 (10th Cir. 1990) "more persuasive" than Martin v. Hendren, 127 F.3d 720 (8th Cir. 1997). The tenth circuit case involved police conduct in serving a bench warrant; the eighth circuit case is virtually on all fours with the instant case.

I have no quarrel with the result reached by the tenth circuit case; it differs not at all from the run-of-the-mill arrests made pursuant to any judicial warrant and, since the arrest takes place away from the courtroom and away from the watchful eye of the judicial officer who issued the warrant, the conduct of the police is more likely to require a closer scrutiny. Nor is the immediate service of the warrant necessary to provide the court with the proper decorum needed to continue the work of the court.

The Martin v. Hendren case, like ours, however involves police officers under the immediate direction and supervision of a judge, following the judge's orders to restore or maintain order in the court instanter, doing precisely what they

are sworn to do. Indeed, it is to do this job of maintaining order at the bidding of the judge that is the very reason they are present in the courtroom.

   In formulating the finding granting these officers quasi-immunity, it is difficult to improve on the language of the majority opinion of the eighth circuit:

[2-4] "Absolute quasi-judicial immunity derives from absolute judicial immunity." Roland v. Phillips, 19 F.3d 552, 555 (11th Cir. 1994). Judges are absolutely immune from suit for money damages when they act in their judicial capacity, unless their actions are "taken in the complete absence of all jurisdiction." Duty [v. City of Springdale, Ark., 42 F.3d 460 (8th Cir. 1994)]. A judge's absolute immunity extends to public officials for "'acts they are specifically required to do under court order or at a judge's direction.'" Robinson v. Freeze, 15 F.3d 107, 109 (8th Cir. 1994) (quoting Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir. 1988)). Like other officials, bailiffs enjoy absolute quasi-judicial immunity for actions "specifically ordered by the trial judge and related to the judicial func-tion." Id. In subduing Martin, Hendren was acting as a de facto bailiff, obeying specific judicial commands to restore order in the courtroom. Those orders unquestionably related to the judicial function. See Mireles v. Waco, 502 U.S. 9, 12-13, 112 S.Ct. 286, 288-89, 116 L.Ed.2d 9 (1991) (per curiam); Terry v. State, 303 Ark. 270, 796 S.W.2d 332, 335 (1990). Hendren is thus entitled to absolute quasi-judicial immunity from sec. 1983 liability for carrying out the judge's orders to handcuff Martin and remove her from the court-room.

   Martin argues that even if Hendren is absolute-ly immune from liability for implementing the judge's orders, Hendren ceased to act in a quasi-judicial capacity when he carried out those orders using excessive force. See Martin v. Board of County Comm'rs, 909 F.2d 402, 404-05 (10th Cir. 1990) (per curiam) (holding officers not absolutely immune for using excessive force in executing arrest warrant). After Martin was decided, however, the Supreme Court held a judge-'s order to use excessive force, issued in the judge's judicial capacity, was a judicial act for which the judge retained absolute immunity. See Mireles, 502 U.S. at 12-13, 112 S.Ct. at 288-89. The Court emphasized that the nature of the function being performed, not the particular act itself, controls the judicial immunity inquiry. See id. The Court rejected the idea that the impropriety of a judge's act strips the judge of immunity, reasoning that "[i]f judicial immunity

means anything, it means that a judge 'will not
be deprived of immunity because the action he
took was in error . . . or was in excess of his
authority.'" Id. (quoting Stump v. Sparkman, 435
U.S. 349, 356, 98 S.Ct. 1099, 1105, 55 L.Ed.2d
331 (1978) (ellipsis in Mireles)). Although the
Mireles Court did not address quasi-judicial
immunity, we find the Court's reasoning persua-
sive in this context. Absolute quasi-judicial
immunity would afford only illusory protection if
it were lost the moment an officer acted improp-
erly. Further, the officers in Martin were exe-
cuting an arrest warrant away from the issuing
judge's courtroom, see Martin, 909 F.2d at 403-
04, but Hendren was carrying out a judicial
command in the judge's courtroom and presence.
Because judges frequently encounter disruptive
individuals in their courtrooms, exposing bai-
liffs and other court security officers to poten-
tial liability for acting on a judge's courtroom
orders could breed a dangerous, even fatal,
hesitation. "For the criminal justice system to
function, . . . courts must be able to assume
their orders will be enforced." Patterson v. Von
Riesen,  999 F.2d 1235, 1241 (8th Cir. l993).

Martin v. Hendren, 127 F.3d 720, at 721-22.

   As to the horrific scenario envisioned by Judge
Lay's dissent, the court dryly (and properly!)
responded ". . . we need not speculate about
hypothetical situations testing the limits of our
holding."

   A decision reversing the trial court in the
instant case is, in my opinion, both logical and
necessary, if courtroom decorum is to be pre-
served at all. To suggest that the judge is
absolutely immune from liability for requiring
the bailiffs to take a person into custody for
refusing the court's direction while exposing the
bailiffs to liability has implications that go
beyond the present case. A probable response (if
it could be done without the bailiff being held
in contempt) would be to suggest that the judge,
cloaked with his or her immunity, step down and
preserve order himself.

   I continue to have sufficient faith in the
judges who serve our courts to believe that they
will oversee the bailiff or bailiffs who carry
out their orders in the courtroom and make sure,
by direction or otherwise, that the orders are
properly carried out with the reasonable amount
of force that the individual cases require.

   I would reverse the district court and hold the
bailiffs to be cloaked with immunity when carry-
ing out the orders of the court relating to the
conduct of court proceedings themselves. It

follows then, that I would reverse the order-denying the sheriff's motion to dismiss. I would join the majority in reversing the order denying the deputies' motion to dismiss the state law claims.